# City Council of Montgomery *v.* Birdsong.

*Proceeding to enforce Assessment for Paving Street of Municipality.*

1. *Constitutional law; act original in form not within constitutional provision prohibiting amendment of statutes by reference to title.*—An act of the legislature, which is in form original and is in itself intelligible and complete, and does not either in its title or in its body appear to be revisory or amendatory of any existing law, is not within the inhibition of the Constitution that "no law shall be revised, amended, or the provisions thereof extended or conferred by reference to the title only" (Const. Art. IV, § 2); and this is true where such act seeks to effectuate the rights conferred by referring to other existing statutes, as furnishing a remedy necessary for their enforcement.

2. *Same; construction of charter of Montgomery, authorizing collection of paving tax.*—Sections 12 and 34 of the charter of the city of Montgomery (Acts, 1892-3, p. 368) authorizing the City Council to improve and pave the streets of the city of Montgomery, and empowering it to levy taxes for such pur-

pose and further providing that the pavement tax so assessed is to be collected and enforced "as in the case of city taxes, (Acts 1886-7, p. 776)," which last mentioned act regulates the sale of real estate in the city of Montgomery for unpaid taxes assessed for municipal purposes, are not void as violative of Art IV, § 2 of the Constitution, providing "that each law shall contain but one subject, which shall be clearly expressed in its title," and that "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only."

3. *Same; pleading; sufficiency of objection to assessment.*—In a proceeding to enforce and collect the assessment of taxes against abutting property for the payment of paving, an objection to the proceeding and to the assessment as levied, upon the ground that as to such paving "the assessment is void because not based upon the benefit to said property, which is in violation of the XIV Amendment of the Constitution of the United States and Section 24 of the Declaration of Rights of the State of Alabama," sufficiently presents the constitutional objection and is not subject to demurrer by reason of its generality.

4. *Levy and collection of paving tax; right of citizen to complain of assessment after same is passed on by City Council; construction of charter.*—One of the sections of a city charter conferred upon the City Council power to pass ordinances for the assessment and levying of a tax upon all property within the city subject of taxation, and further provided that such assessment when made should be returned to the Mayor, and by him laid before the City Council, and that the Mayor should cause notice of such assessment to be made, and fix a time when the City Council would proceed to hear and determine all complaints which might be made against such assessment, at which time the Council had authority to correct errors and supply omissions, and when such assessment was passed on by the City Council, it should have, as against the owner and the property, the force and effect of judgment. By other and separate sections of said charter, authorizing the assessment and collection of part of the cost of paving the streets, it is provided that the owner of the property against which such paving tax is assessed shall be cited to appear in the City Court to answer such assessment, and he is given the right to show cause in the proceeding instituted in said court to enforce and collect such assessment why a decree should not be rendered for the sale of his property. *Held*: that by the failure of an owner of property against which a paving tax is assessed to appear before the City Council and make complaint against

[City Council of Montgomery v. Birdsong.]

such assesssment and to have the same corrected, such owner is not estopped from subsequently objecting to such assessment in a proceeding in the city court to collect and enforce the same, or from questioning the constitutionality of the law by which such assessment is sought to be justified and enforced; nor was it necessary for the property owner, as respondent in such proceeding to resort to *certiorari*, in order to have the assessment reviewed.

5. *Right of municipality to levy and collect paving tax.*—A municipality, so authorized by its charter, can constitutionally make assessments against particular property for street and sidewalk improvements to the extent that the property is especially and particularly benefited; requiring the owner thereof to pay to the extent his property is benefited by such improvements.

6. *Same; construction of city charter.*—Where the charter of a city granting to it power to improve its sidewalks and streets by paving and otherwise, further provides that by ordinance, the City Council may "assess the property to be benefited thereby for such amounts as may be fair and reasonable, not to exceed one-half of the construction thereof, and to the extent of laying down the pavement," and it further provided that the assessments are to be made with reference to the property on both sides of the streets, the assessment against the different owners on opposite sides of the street not to exceed, in any case, one-fourth of the cost of improvement, and provision is further made for the owner of the property to appeal to the City Council to have any errors made in the assessment corrected or any omissions supplied, and further that the property of such owner shall not be sold for such improvements until a Court of Equity shall have so decreed, after an opportunity is given to the owner to show cause why such decree should not be rendered, the exercise of such charter powers in levying an assessment against the property and seeking to enforce the collection of the paving tax so levied, is not an infringement of the XIV Amendment of the Federal Constitution, prescribing that no State shall deprive any citizen of life, liberty or property without due process of law, or of Section 24, Article I of the Constitution of the State of Alabama, forbidding the taking of private property for public use without just compensation being first made to the owner thereof.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The proceedings in this case were instituted by the City Council of Montgomery, under provision of the act of the General Assembly, regulating the sale of real estate in the city of Montgomery, for unpaid taxes for municipal purposes. The pleadings in the case and the facts relating to the cause are sufficiently stated in the opinion. Upon submission of the cause upon a motion to dismiss the answer of the respondent and upon demurrer to such motion, the court entered a decree overruling the motion to dismiss the answer and overruling the demurrers to said answer, and further decreed that the assessment made in said cause be annulled and the cause dismissed. From this decree, the complainant, the City Council of Montgomery, appeals and assigns the rendition thereof as error.

GRAHAM & STEINER, for appellant.—1. The charter of the city of Montgomery authorizes the city council, among other things, "to pave, gravel, or macadamzie any street, * * * in whole or in part, in the corporate limits of said city," and empowers it "to adopt and provide the means therefor and to pass all such by-laws and ordinances as may be required for assessing the property to be benefited thereby for such amounts as may be fair and reasonable, not to exceed one-half of the construction thereof and of the expense of laying down the same, and also to collect and enforce such assessments as in the case of city taxes," etc.—Acts 1892-3, p. 384. Section 26 of the same act, on page 380, gives the council the authority to pass such ordinances as may be necessary to make a general assessment upon all property in the city for general governmental purposes, which assessment is required to be returned to the mayor and by him laid before the council. After ten days notice, by publication, by the mayor, of the time when the council will proceed to hear and determine complaints against such assessments, it is the duty of the council to correct errors and supply omissions, and after same has been done the said assessments have the force and effect of judgment. We earnestly insist that the exception to and motion to dismiss the said contest, or by whatever name the paper

filed by said Birdsong may be styled, should have been sustained.

To all intents and purposes, the city council of Montgomery while engaged in passing upon assessments and hearing complaints in reference thereto, is just as much a court as if regularly organized for the trial of causes. Therefore, whatever it does is judicial in its nature and in fact. Hence, if it has jurisdiction of the subject matter, as it did under the city charter, and of the person, as it acquired by the publication of notice of the time when objections to said assessment would be heard, the owner can not thereafter object.—1 Black on Judgments, §§ 245, 246 and 247; *Harris v. Lester,* 80 Ill. 307; Freeman on Judgments, (2d. ed.) § 249; *M. & C. R. R. Co. v. Grayson,* 88 Ala. 572; *Driggers v. Cassady,* 71 Ala. 529; *Spencer v. Merchant,* 100 N. Y. 585. The reason of the rule is not only common sense, but it is sound policy, because, if judgments, which have been solemnly rendered in accordance with the forms and requirements of law, can be disregarded and set aside, after the same have become effective and binding, upon grounds other than want of jurisdiction or fraud, property and other rights could never be finally settled. Absolute repose must be the result of formal judgment, with the exceptions above noted, if respect and confidence in judicial findings and results are expected. *Morris v. Gentry,* 89 N. C. 248; *Porter v. Gile,* 47 Vt. 620; *Harris v. Lester,* 80 Ill. 307.

2. Where new jurisdiction is created, as that conferred upon the city council of Montgomery in reference to assessments, and it is exercised in a summary manner, "or in a course different from the common law, *certiorari* is the appropriate remedy" for review, unless there is a provision for an appeal.—*Ex parte Tarlton,* 2 Ala. 35; *Faust v. Mayor,* 83 Ala. 279; *Ex parte Boynton,* 44 Ala. 261; *Fonda v. Canal Appraisers,* 1 Wend. (N. Y.) 228 *People v. Park Com's.,* 97 N. Y. 37; 4 Encyclopedia Pl. & Prac., title *Certiorari; Intendent v. Chancellor,* 6 Ala. 899; *Camden v. Bloch,* 65 Ala. 236; *Miller v. Jones,* 60 Ala. 89; *Camden v. Mulford,* 26 N. J. Law, 49.

3. The demurrers to the contest as a whole should

have been sustained. If appellee had any objections, they should have been presented to the Council when, in the exercise of its judicial function, it was hearing complaints to and passing upon assessments, otherwise, they will be considered and, in fact, are waived by her conduct. "In judicial proceedings, for the furtherance of public justice, and the discouragement of dilatory pleas and technical objections, parties who do not reasonably avail themselves of their legal rights are held by courts to have conclusively waived them."—*Fox v. Harding,* 7 Cush. (Mass.) 520; *Warren v. Flynn,* 37 N. H. 340.

4. Upon the general rule that a person who asks for equity must also do equity, we insist that contestant is not with clean hands until she offers to pay what is reasonable, just and fair for the improvement done her property by the gravelling laid down in front thereof, and therefore not entitled to the relief asked.—*State R. R. Tax Cases,* 92 U. S. 575; *Northern Pac. R. R. Co. v. Clark,* 153 U. S. 252; *Elliott v. Sibley,* 101 Ala. 344; *Foster v. Winchester,* 92 Ala. 497; 3 Brickell Dig. 330, § 2.

5. The third ground of contest is defective, because it totally fails to specify in what particular the ordinance under which said assessment was made is violative of the XIV amendment to the Constitution of the United States, or of section 24 of the Declaration of Rights of the Constitution of the State of Alabama. Section 24 of article I (Declaration of Rights) of the Constitution of the State of Alabama embraces three subjects, with certain exceptions or provisos, therein named. The first is, that the right of eminent domain shall not be abridged, nor so construed as to prevent the General Assembly from taking the property and franchises of incorporated companies, and subjecting them to public use, the same as individuals; the second is, private property shall not be taken or applied for public use, unless just compensation be first made therefor; and the third is, that private property shall not be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner. Is it possible for us to say, by said section three, which of these subjects is intended by the pleader? The fact that appellee's counsel may have disclosed in his argument what he intended can not relieve the

[City Council of Montgomery v. Birdsong.]

infirmity complained of by appellant's demurrer. There is nothing presented upon which a definite material issue can be taken.—Code, §§ 700, 3285, 3303; 1 Chitty on Plead., (16 Am. ed.), 256; *Morris v. Beall*, 85 Ala. 598; *Williams v. Bowdin*, 68 Ala. 126; *Donigan v. Wood*, 49 Ala. 242.

If the said third ground of objection is to be treated as a plea it is both uncertain and insufficient and the demurrer thereto should have been sustained. There is nothing stated therein upon which a certain and material issue could be taken.—Code of Alabama, § 3294; *Milligan v. Pollard*, 112 Ala. 465; *Phoenix Insurance Co. v. Moog*, 78 Ala. 284; 2 Mod. Equity Practice (Beach) §§ 318, 319; *Penny v. Jackson*, 85 Ala. 67; *Jackson v. Rowell*, 87 Ala. 685.

7. "If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit assessments and to direct an apportionment of the cost by frontage should by this time be considered as no longer open to controversy.—*Raleigh v. Peace*, (N. C.) 17 L. R. A. 330, and notes on pp. 330, 331; *Shelby v. Detroit*, 45 Mich. 431; *Williams v. Mayor*, 2 Mich. 560; *Motz v. Detroit*, 18 Mich. 495; *Farrar v. St. Louis*, 80 Mo. 379; *White v. People*, 94 Ill. 604; *Springfield v. Green*, 120 Ill. 269; *O'Reilly v. Kingston*, 114 N. Y. 439; *Bacon v. Savannah*, 86 Ga. 301; *Baltimore v. Johns Hopkins Hospital*, 56 Md. 1; *State v. Fuller*, 34 N. J. L. 227; *McGonigle v. Alleghaney*, 44 Pa. 118; Dillon on Munic. Corp. (4th. ed.) § 752; Cooley on Taxation, (2d. ed.) pp. 644 to 648 and citations; 24 Am. & Eng. Encyc. p. 65; 24 Am. & Eng. Encyc. p. 69, and note 3; *People v. Brooklyn*, 4 N. Y. 419.

8. Taxation for a public purpose, however great, is not taking property for public use in the sense of the Constitution.—*County of Mobile v. Kimball*, 102 U. S. (L. C. P. Co.'s ed.) 238.

GORDON MACDONALD, MARKS & SAYRE, LOMAX, CRUM & WEIL and WILLIAM T. SEIBLES, *contra*.—The city court of Montgomery had no jurisdiction to entertain the proceedings in the present case.

As it will clearly appear from an investigation of the amended charter of the city of Montgomery—Acts of

1892-3, page 368—the supposed jurisdiction of the city court of Montgomery, sitting in equity over such proceedings as this is based on the act of the General Assembly, approved February 10th, 1887.—Acts of 1886-87, page 776. It will be noted that this act is not, nor does it purport to be any amendment to the charter of the city of Montgomery, but is a complete independent enactment. Its title is: "An act to regulate the sale of real estate in the city of Montgomery, Alabama, for unpaid taxes assessed for municipal purposes."

It is conceded by appellant, and, if not conceded the record shows it, that the reference words "as in cases of city taxes," refers to the provisions of the entirely independent Act of February 10th, 1887, above mentioned, and that this proceeding, in the city court of Montgomery, if authorized at all, is based on the provisions of the last named act.

Section 2 of Article IV, of the constitution of Alabama, provides that "no law shall be revised, amended or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length." We submit that it would be difficult to find a case where the attempt is so clearly made to violate this most wholesome provision of the constitution. The legislature of 1892-3 attempted to "extend the provisions" of the act of 1886-7 to the matters embraced in this act amendatory of the charter of the city of Montgomery, and this they are supposed to have done without so much as a "reference to the title" of the former act. There was not even the slightest attempt at re-enacting and publishing at length that part of the provisions of the act which were supposed to be "extended or conferred" on the latter act. This constitutional provision has been frequently before this court for construction and application, but never in a case where there has been a more flagrant violation of it than in the one at bar.—*Bay Shell Road Co. v. O'Donnell*, 87 Ala. 376.

The offense of the sections of the amended charter of the city of Montgomery, against this constitutional provision is more open and indefensible than that con-

tained in the Bay Shell Road act, *supra.* The purpose
of this constitutional requirement was to have each bill
considered by the General Assembly in and of itself,
present the full scope, operation and effect of the pro-
posed law, so that members might know and intelli-
gently consider the details of every measure, and not
vote either *aye* or *nay*, in blind ignorance of its provis-
ions, or even in trusting confidence to the representa-
tions of others.—*Rice v. Westcott,* 108 Ala. 353; *Todd
v. The State,* 85 Ala. 339; *Bolling v. LeGrand,* 87 Ala.
491.

2.   There is still another, and, it seems to us, a fatal
objection of the city court to entertain this suit, and
which shows the nullity of these proceedings.   The act
of February 10, 1887, is itself violative of that part of
Article IV, section 2, of the constitution, which reads:
"Each law shall have but one subject, which shall be
clearly expressed in its title."   It is entitled "An
Act   to   regulate   the   sale   of   real   estate   in   the
city   of   Montgomery,   Alabama,   for   unpaid   taxes,
assessed   for   municipal   purposes."   The   whole
body of that act refers to taxes *or* assessments.
The distinction is repeatedly drawn between the two
in every section of the act.   In section 8 of the act it
speaks of any "sale for taxes and assessments *or* either
of them."   The distinction between "assessments" and
taxes assessed is well defined and understood.   Local
assessments on property are not taxes.—*Klein v. City of
Birmingham,* 89 Ala. 461. This is, indeed, the only con-
clusion giving validity to assessments for local improve-
ments which are of the character sought to be enforced
in this proceeding.   So it must be conceded that the
word "assessments" as contradistinguished from "taxes"
found in this act is quite another matter or "subject"
than that of "taxes."   We have thus an act which has
only one subject expressed in its title, yet two subjects
in the body of the act, to one of which there is no refer-
ence whatever in the title.   The integrity of the consti-
tutional provision which declares that "each law shall
contain but one subject, which shall be clearly expressed
in its title"—Sec. 2, Article IV, of the Constitution—

has been maintained by this court. It is hardly neces-sary to refer to the authorities: *Ballentyne v. Wicker-sham,* 75 Ala. 533; *Ex parte Reynolds,* 87 Ala. 138; *Chiles v. Monroe,* 4 Metc. 82; *State v. Harrison,* 11 La. An. 112; *Dorsey's Appeal,* 72 Pa. St. 192; *People v. Allen,* 42 N. Y. 404.

3. According to the charter and its assistant act (Act Feb. 10, 1887) the assessment by the city council was not, so far at least as real estate is concerned, a final judgment. A judgment to operate as an estoppel must be conclusive of the rights of the parties—must be final.—Freeman on Judgments, § 251. There was no reason why the defendant should review the assessment by *certiorari* when she was informed by the statute, that before the assessment could become effective and bind-ing on her property she would have the opportunity in this court, and in this proceeding, of making any de-fense which could be available to her on *certiorari.* Moreover, that section is unconstitutional, in that it provides for personal judgment without personal ser-vice.—*Ex. Nat. Bk. v. Clements,* 109 Ala. 270.

4. The following propositions in regard to such as-sessments as the one sought to be enforced against ap-pellant, can not be successfully controverted.

*a.* That such assessments are not "taxes" and can not be maintained as such.

*b.* That the only principle upon which such assess-ments can justly rest, is that the cost of local improve-ments can be assessed upon particular property, "only to the extent that it is specially and peculiarly bene-fited, and, since the excess beyond that is a benefit to the municipality at large, it must be borne by the gen-eral treasury," and that any other rule is illegal, op-pressive and arbitrary and is an attempt to take pri-vate property for public use without compensation and is also, an attempt to deprive the owner of his property without due process of law.

*c.* That no court, or any body of men vested with judicial, or quasi judicial, powers can say as a matter of law, and without proof or the opportunity to offer it, that paving a street or sidewalk will inevitably and in all cases result in an improvement in value or benefit

to adjacent and abutting property, or that it is, *ex neces-sitate rei*, benefited to any particular extent, to be ascer-tained by its frontage on the street paved, at so much per front foot.

*d.* That the assessments under consideration are, by the charter of the city of Montgomery, based solely and exclusively on the front footage of the property adja-cent to and abutting on the street or sidewalk paved. That as to the sidewalks the whole cost is assessed against the owner of the property, and, as to street pav-ing, a fixed and arbitrary amount is fixed, and that in both instances, such assessment is not predicated on the benefit to the abutting property owner.—*Mayor etc. of Birmingham v. Klein*, 89 Ala. 461; *Norwood v. Ba-ker*, 172 U. S. 269.

HARALSON, J.—This proceeding was instituted and prosecuted in the city court of Montgomery,—sitting in equity,—under the alleged authority of an act of Feb. 10th, 1887 (Acts, 1886-87, p. 776), entitled "An act to regulate the sale of real estate in the city of Montgom-ery, Alabama, for unpaid taxes assessed for municipal purposes." This act relates exclusively, as shown by its title, to the collection of taxes for municipal purposes, and has no reference to the sale of property to enforce the collection of assessments for street and sidewalk improvements, provided for in another enactment.

The first section of the act provides that "Whenever any taxes or assessments on real property in the city of Montgomery shall be due and unpaid for thirty days, the clerk of the City Council of Montgomery, may, at any time thereafter file in the City Court of Montgom-ery, on the equity side of said court, a list of the property on which the taxes or assessments are so in default, describing the same as accurately as may be according to the maps of said city in common use, and with the name of the owner of each separate piece, if known, and the amount of taxes, assessments, interests and costs due for any previous time on each piece separately," etc. The second section provides "that the register of the City Court shall keep a book in which he shall enter the property so reported to him delinquent, stating each

piece separately," and docketing each case as follows: "The City Council of Montgomery v. (describing the property), and against such entry shall note the ownership of said property, and the amount of taxes, assessments, interest and costs due on said property, and shall leave a space for the proper judgment in each case." The register is then required to post a notice on the property "stating the facts, that the taxes or assessments, or both, are delinquent, and giving the amount of the same, * * * and that proceedings are pending before the city court in equity to have the same sold for non-payment of taxes and assessments, or either, as the case may be." Section 3 provides: "That if the taxes or assessments remain unpaid for 30 days, after the posting and service of the notices above required, or after the completion of the publication required, the City Council, by its attorney, may move the said city court for a decree against said property; the said court shall thereupon *if good cause be not shown to the contrary,* enter upon said docket a decree against said property for the amount of the taxes, assessments, interest and costs that may be due on said property up to that time, and a decree for the sale of the property for the non-payment of the same which decree shall be sufficient, if in substance as follows: Due notice having been given, and *no cause shown to be contrary,* it is decreed," etc. Section 4 provides for an appeal to the next term of the Supreme Court by any person interested in said property, from the decree of the said city court, on giving bond and complying with the terms therein specified for an appeal. Such appeal it is provided shall be heard on the record and bill of exceptions reserved by the party taking the appeal, setting out such of the evidence as he may deem necessary to a fair presentation of his case, and the decree must be affirmed or reversed, as may seem proper to the Supreme Court. An appeal is also provided for the city.

The proceedings in this case were for a decree in said city court, for the collection of assessments for sidewalk and street paving. It followed and complied substantially with the provisions of said act of the 10th of

[City Council of Montgomery v. Birdsong.]

February, 1887, as though the proceedings were for the collection of taxes levied and sought to be enforced thereunder, for general municipal purposes. The assessment in this case, is in gross "for sidewalks and street paving,"—$76.35, interest to April 1, 1898, $2.03, making the total sought to be enforced for both sidewalk and street paving $78.38. A motion to show cause within thirty days why a decree should not be rendered against said property, was duly issued and served on the defendant, according to the directions of section three of said act.

The appellee, the personal defendant in said proceedings, appeared in said city court to show cause why said property should not be condemned or sold for the satisfaction of the assessment made against it by the City Council, and, among many grounds, set up the following, which are important to be noticed: "1st. That the city court in equity has no jurisdiction to entertain the proceeding." 2d. "That said assessment is not authorized by law." 6th. "As to such gravelling and paving, the assessment is void, because not based upon the benefit to said property, which is in violation of the XIV amendment of the Constitution of the United States, and of section 24 of the Declaration of Rights of the State of Alabama." 8th. "That the authority claimed for invoking the jurisdiction of the court in the premises is based on the amended charter of said city, which purports to give authority to collect and enforce such assessments as other taxes are collected; such provision being unconstitutional in this, that it seeks to amend the provisions of another law by reference to it only, and does not set out the law which is sought to be amended or extended."

The City Council contested these grounds by demurring to them, alleging their insufficiency, but the form of objection was unimportant in a proceeding of this character, since the sole purpose of the objections of the city, in whatever form presented, were to raise the insufficiency of the grounds on which the defendant in said city court opposed "a decree against (her) said property," for a sale thereof to pay and satisfy the special assessment against it for street and side walk im-

provement.   We need not here repeat these grounds
urged by the city, for they are numerous; nor do we deem
it important to notice any of the objections of the de-
fendant against a decree, nor any of the city's objec-
tions to defendant's grounds of objection, except such
as go to the merits of the controversy.  All others we re-
gard as being without controlling importance, and a
waste of legal energy.

The first and second of defendant's objections to a
decree, we infer from the argument of counsel, are the
same in substance as the eighth ground, and we treat
them as one.

Section 34 of the charter of the city of Montgomery
(Acts, 1892-93, p. 368), provides: "That it shall be law-
ful for said city council, from time to time, and in such
manner as it may be determined, to pave, gravel or ma-
cadamize any street, avenue, square, public place or
alley, in whole or in part, within the corporate limits
of said city, whenever said city council may deem it
necessary or expedient to do so, and for that purpose
said city council is hereby authorized and empowered
to adopt and provide the means therefor, and to pass all
such by-laws and ordinances as may be required for as-
sessing the property to be *benefited* thereby, for such
amounts as may be fair and reasonable, not to exceed
one-half of the construction thereof, and of the expense
of laying down the same, and also to collect and enforce
such assessments *as in the case of city taxes,* (Acts of
1886-87, p. 776) ; such assessments to be made on proper-
ty on both sides of the street, or parts of streets thus im-
proved per front foot, the assessment not to exceed in
any one case more than one-fourth of the cost of the im-
provement in front of the property taxed, provided that
corner property which has been assessed for the improve-
ment of the street on one front shall not be assessed for
the improvement of the street on the other front, exceed-
ing one-eighth of the cost of the improvement on such
front, nor exceeding two dollars and one-half *per front
foot,* but in case of corner property the assessment shall
include all of the street in front of the sidewalk on the
narrowest front of said property."  This section, it will
be noticed, authorizes the city council "in such manner

it may be determined, to pave, gravel or macadamize
any street, avenue, square, public place or alley in whole
or in part within the corporate limits of said city,"
which power had also been conferred by section 7 of the
charter. This language includes, of course, any sidewalk
as well as street proper. The sidewalks of a city are a
part of the street; they are avenues of travel and pub-
lic places in the city. Section 12 of the charter had al-
ready provided "that the city council shall have power
to compel owners or tenants of property to keep the
sidewalks in front of such property clean and in repair,
—and the owners having failed to repair the same, after
such notice as may be prescribed by ordinance,—at the
cost of the owner, and tax the cost thereof against the
adjacent property, which tax shall be a lien on said
property and be enforced and collected as city taxes are
collected." This part of that section has reference to
keeping the sidewalks of the city clean and in repair,
and does not relate to paving the streets or sidewalks.
The remaining part of the section immediately following
the foregoing as a continuous sentence, refers to such
pavements viz.: "To require pavements to be laid, and
prescribe the kind of pavements to be laid, and to com-
pel the laying of the kind of pavement prescribed, in
the streets, sidewalks, alleys and public places of said
city, at the expense of the property owner, except as
herein provided." This last expression,—"except as
herein provided,"—manifestly refers to the provisions
of said section 34 above quoted, prescribing the extent
of the owner's liability to pay for street and sidewalk
improvements. The contention of defendant is that these
provisions of sections 12 and 34 of said charter are un-
constitutional, and if so, the city court was without
authority to proceed under them. The alleged uncon-
stitutionality of these sections is based on the grounds
that said sections were amendments of the act of 1886-7
referred to in the first paragraph of this opinion, by
which they sought to engraft the provisions of said act
into the charter, by reference only, offending, as al-
leged, section 2, Art. IV of the State constitution, pro-
viding that "each law shall contain but one subject,

which shall be cearly expressed in its title," * * * and that "no law shall be revived, amended or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." The reference to the former statute was that these assessments for improvements were to be collected and enforced *as in case of city taxes,* as provided in said act of 1886-87 ,above referred to. But this contention is without merit. The matters in the older act referred to in said sections of the charter, are not foreign to, or incongruous with the title of the charter. The short title—"To establish a new charter for the city of Montgomery"—is general and comprehensive, embracing every power and right that may be exercised or enjoyed by a municipality, in the administration proper of its governmental affairs. If it were required to set out in the title all the granted powers of the municipality, it would, to no good purpose, greatly impede legislation. Street and sidewalk improvement, and the authority to enforce the same, belong to the ordinary grants of power to municipalities. The subject is no more general than others held to be good, such as "to adopt a penal code," "to adopt the common law of England in part," to "adopt a Code of laws," "to establish a police government for the city of Detroit," etc. Nor does the enactment offend that other provision of said section of the State constitution, touching the revision, amendment and extension of laws. That provision has been repeatedly held to apply to statutes strictly amendatory, and not to such as are independent and complete within themselves, although they adopt by reference merely, the provisions of the other statutes on the same subject, there appearing in more enlarged and extended form. Such independent legislation does not fall within the mischief designed to be remedied or prohibited by this provision of the constitution. We have considered this subject heretofore, and so recently, there remains no good reason for enlarging further on it.—*State v. Rogers*, 107 Ala. 444; *Cobb v. Vary*, 120 Ala. 263. See also *People v. Mehaney,* 13 Mich. 481.

The city interposed the objection to the consideration of.defendant's sixth ground against the proceeding, in substance, that it is too general, and "does not designate in what particular the said assessment.is in violation of the XIV amendment to the constitution of the United States, or of section 24 of the Declaration of Rights of the Constitution of Alabama." But we apprehend that while the better course of pleading might require the specific grounds wherein said assessments offended these fundamental provisions of the Federal and State constitutions to be set forth, yet the constitutional objections raised in the way they were, were not demurrable for insufficiency for their generality. A similar question arose and was considered in the case of the *Bay Shell Road v. O'Donnell*, 87 Ala. 376, where the defendant plead the general issue, and, specially, a statute under which he sought to justify the alleged trespass. The plaintiff demurred to the special plea on the ground of its alleged unconstitutionality. The court said: "It may admit of doubt, whether the statute is unconstitutional for either of the reasons assigned in the demurrer; but, if the act is bad on any ground, or as being violative of any provision of the constitution, the act of the court in sustaining any of the grounds stated would bear a striking analogy to the ascription of a wrong reason for a correct decision, in which case the decision would be upheld; and, in any respect, if error at all, would be without injury to the defendant company, as it could never justify under the void law."

Section 26 of the charter bestows on the city council the power to pass ordinances for the assessment and levy of taxes upon all property subject to taxation by the laws of the State. This levy and assessment for general governmental purposes, is referred to in the charter and made a part thereof as assisting the same in providing the same machinery for the assessments and collections for street and sidewalk improvements. Said section 26 further provides that assessments when made "shall be returned to the mayor and by him laid before the city council, and the mayor shall cause at least ten days' public notice that such assessments have been

made, and the time when the city council will proceed
to hear and determine upon all complaints which may
be made against such assessment, and it shall be their
duty *to correct the errors and supply omissions,* and
when the same shall have been passed on by the city
council, the said assessments against persons and prop-
erty shall have the force and effect of judgments," etc.
It is insisted by the city in that the defendant has not
shown that she appeared before the council "to correct
the errors and supply omissions," in the assessment
against her property, not for general municipal taxation,
but for street and sidewalk improvement, she is now
estopped to raise any question touching the assessment,.
or questioning the constitutionality of the law by which
such assessment is sought to be justified, and that the
finding of the city council is final and conclusive on her.
Perhaps we cannot in this connection say anything more
helpful to a correct understanding and determination
of this contention than to quote the words of the learned
judge below, who, in his opinion in the case touching
this question, said: "The reply to this on the part of
the defendant is, that notwithstanding the provision
giving assessment by the city council the effect of a judg-
ment, yet the same charter requires that the property
owner be cited to appear in this court, and clearly recog-
nizes his right to show cause in this proceeding why a
decree should not be rendered for the sale of his prop-
erty. I see no way of escape from the force of this.
To hold here, that those provisions of the charter which
require notice in this court and an opportunity to show
cause mean nothing, would be to eliminate by judicial
decision from the act, by virtue of which alone this pro-
ceeding is being carried on, its leading and essential
features. Yet such would be the effect of holding the
defendant to be estopped by the assessment of the
city council. According to the charter and its assistant
act (Act Feb. 10, 1887), the assessment of the city coun-
cil was not, so far at least as real estate is concerned, a
final judgment; and a judgment to operate as an es-
toppel, must be conclusive of the rights of the parties,
must be final.—Freeman on Judg. § 251."

It must not be understood in what the court said that it meant, nor that we so hold,—for it was unnecessary for the question to be there passed on, or for us to pass on it here,—that an assessment for taxes when passed by the city council has the force and effect of a final judgment even as to personal property, in cases where the owners seek relief in the city court.

Answering another objection raised by the city, the court very correctly held, that there was no reason why the defendant should be required to review the assessment by *certiorari*, when she was informed by the statute that before the assessment could become effective and binding upon her property she would have the opportunity in this court and in this particular proceeding, of making any defense which could be available to her by *certiorari*.

The foregoing leads to the remaining and vital questions in the case, whether the statute is not void under the XIV amendment of the Federal constitution, prescribing that no State shall deprive any person of life, liberty or property without due process of law, as well as of section 24, Article I of the Constitution of the State, forbidding that private property shall be taken or applied for public use, unless just compensation be first made therefor.

It is not denied, that such assessments against particular property for street and sidewalk improvement may be constitutionally authorized, to the extent that the property is specially and particularly benefited; but it is insisted that there can be no justification for any proceeding which charges the land of an owner with an assessment for a public improvement, greater than the benefits to be received thereby, since such an assessment would be a case of appropriating private property to public uses without just compensation.

Upon this subject in a recent adjudication, the Supreme Court of the United States says: "It has been adjudged that the due process of law prescribed by that amendment (XIV to the Constitution of the United States) requires compensation to be made or secured to the owner when private property is taken by a State or under its authority for public use.—*Chicago B. & Q. R.*

Vol. 126.

[City Council of Montgomery v. Birdsong.]

*Co. v. Chicago,* 166 U. S. 226, 241; *Long I. Water S. Co. v. Brooklyn,* 166 U. S. 685, 695. * * * The principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired, if it were established as a rule of constitutional law, that the imposition by the Legislature upon particular private property, of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvements, could not be questioned by him in the courts of the country. It is one thing for the Legislature to prescribe it as a *general* rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the sum so fixed is in excess of the benefits received. In our judgment the exaction from the owner of private property for the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation."—*Norwood v. Baker,* 172 U. S. 269.

We have indulged this lengthy extract from this case, sustained by many authorities cited and quoted from at length,—which we deem it unnecessary to here repeat,—to show the real question there decided, to be here applied, and which seems to us to be consonant with reason and authority.—See also *Mayor v. Klein,* 89 Ala. 461.

It remains to apply these principles to the provisions of the charter of Montgomery, to ascertain if they violate the Federal and State Constitutions in the manner

contended by defendant. In the first place said section 26 of the charter gives the city council, in assessing property for such improvements, upon complaint of the owner, the power to "correct the errors and supply the omissions therein." This provision is very broad. It is a technical construction, as we shall the better understand further on, to limit the errors that may be thus corrected, to an arithmetical calculation of the front-footage of property improved. Without illiberality of construction, the words *errors and omissions,* may not only be construed to mean errors in actual measurements, but also in the omissions to accord to owners any rights which the council may have intentionally or unintentionally failed to accord to them, in making said assessments under the provisions of the statutes. Section 34 of the charter, as will appear on examination, empowers the council to provide the means for such improvements, and to that end pass by-laws and ordinances for assessing the property to be benefited by the improvements of its sidewalks and streets, "for such amounts as may be fair and reasonable." This certainly excludes the idea of an arbitrary assessment by front-footage without reference to any other consideration, such as the values of and benefits conferred on the property improved. Moreover, the words "for such amounts as may be fair and reasonable" are immediately followed by the words "not to exceed one-half of the construction thereof (streets and sidewalk improvement) and of the expense of laying down the same," * * * "such assessments to be made on both sides of the street, or parts of streets thus improved per front foot." It appears from these provisions that the assessments are to be fair and reasonable; that they are *not to exceed* (but of course may be less, according to the conditions in each case) one-half of the construction and the laying down of such improvements; that the assessments are to be made with reference to the properties on both sides of the street, and not to that on one side merely; that the owners together, in no event are to pay a sum exceeding one-half of the cost thereof, leaving the other half to be

paid by the municipality; and this provision,—to determine what the owners on opposite sides of the street shall pay, adjusting the assessment to each individual owner and piece of property,—if followed by another, directing that the assessments against each shall be *per front foot,* "the assessment (against properties of different owners on opposite sides of the street) *not to exceed* in any case more than one-fourth of the cost of improvement in front of the property assessed, *nor more* (in any instance) than ten dollars per front foot of the property taxed," etc. The front foot measurement here provided, it will thus be seen, is not to ascertain a definite and arbitrary amount by that measurement alone, but the front-footage is mentioned as a means of fair apportionment between properties and their owners, on opposite sides of the street, it having been specified that the amounts assessed against each is to be fair and reasonable, and not to exceed against each piece of property, one-fourth of the cost of the entire work. In addition to this, for the greater security of the property owner against unfairness in assessment, it is added, that this one-fourth of the cost, shall never exceed ten dollars per front foot of his property.

It would seem, therefore, that great caution is exercised in the statute against arbitrary, unfair and unreasonable assessments, such as requiring an owner of property to pay an amount in excess of the benefits the improvements conferred on his property. It was scarcely conceivable that under these restrictions such a result could happen; but, in case it should, in any instance occur, a still greater safeguard against unfairness is added, that the owner may apply to the council, and it is made their duty to correct any error or supply any omission that may have occurred. Furthermore, as if this were not enough, and to multiply safeguards for the protection of owners of property, it is again provided that their property shall not be sold for such improvements, until the city court in equity shall have so decreed, after an opportunity to them to show cause why such a decree should not be entered. Surely, if it were there shown by a property owner that the assessments against him exceeded the benefits conferred on his prop-

erty (a case not likely to arise under the restrictions and limitations of the charter), that court, sitting to do equity between the city and property owners, would have the authority to correct such an error and prevent such an injustice. It was for that very reason, it may be fairly supposed, the Legislature required these assessments to be passed on by a court of equity, before a sale of the property assessed should be had. The result of this investigation leads to the conclusion that these charter provisions are not violative of the provisions of the constitution of the United States or the State of Alabama, in the particulars urged by the defendant.

The decree of the city court in annulling the assessment in this case and dismissing the cause out of court, must be reversed and the cause remanded, to be there proceeded with in conformity with the principles herein expressed.

Reversed and remanded.