# City Council of Montgomery *v.* Moore.

*Proceeding to enforce Assessment against Property for Cost of Paving.*

1. *Constitutional law; statute authorizing issuance of bonds for the purpose of paving in the city of Montgomery; provisions for the raising of funds germane· to purpose of act.*—The provisions of the act of the General Assembly approved February 18, 1895, entitled "An act to authorize the City Council of Montgomery to issue bonds for the purpose of paving or otherwise improving the streets and sidewalks, or either, of the city of Montgomery," (Acts of 1894-95, p. 906), that the cost of such paving, together with the expenses incident to the issuance of such bonds and the interest thereon shall be assessed against, and collected from, the owners of the property abutting on such paving, and that the assessment shall be prorated according to the frontage of such property, and ₒ collected in the same manner as city taxes, etc., are germane, cognate, and complementary to the subject expressed in the title of said act; such provisions having regard to the raising of funds with which to pay the principal and interest of the bonds, which it was the purpose of the act, as expressed in its title, to authorize the said city to issue.

2. *Same; paving of street in city; apportionment of cost legislative question.*—It is within legislative competency to assess the whole cost of the paving of a street in a city against abutting property, prorated according to the frontage of such property, without the judicial ascertainment of the benefits accruing to such property from such improvement, and to apportion the cost of the improvements according to, and not in excess of, the actual benefits enuring from them to the several abutting lots; and an act of the Legislature providing for such assessment, is not violative of any of the provisions of the State or Federal constitutions.

3. *Same; same; same.*—It is a matter of legislative expediency for legislative determination, whether property abutting on a street in a city will be benefitted to the extent of the cost of paving the streets and sidewalks along the front of such property; and it is, therefore, entirely competent for the Legislature to impose the cost of such paving, by way of special

taxes, upon the property abutting the improved street, appor-
tioning the charges thereto according to the distance the
several lots may front upon the street so paved.

APPEAL from the City Court of Montgomery, in
Equity.

Heard before the Hon. A. D. SAYRE.

The present case grows out of a proceeding instituted
by the City Council of Montgomery for the purpose of
enforcing the payment of an assessment upon property
owned by the appellee, Ella Moore, for paving a street
upon which said property abutted in the city of Mont-
gomery. The proceeding was instituted in the city court
of Montgomery, in equity, under and in pursuance of
the authority of "An Act to regulate the sale of real es-
tate in the city of Montgomery, Alabama, for unpaid
taxes assessed for municipal purposes," approved Feb-
ruary 10, 1887.—Acts of 1886-87, p. 776.

The proceedings were commenced by the clerk of the
City Council of Montgomery filing with the register of
the city court of Montgomery, a list of real property on
which taxes or assessments in the city of Montgomery
for municipal purposes had been assessed and had re-
mained unpaid for thirty days. In the list of the prop-
erty so returned by the clerk of the city court was a
house and lot owned by Mrs. Ella Moore on the south-
east corner of Washington and Decatur streets, in the
city of Montgomery, and the assessment against this
property was for paving the street and sidewalk and
putting in curbing in front of said property along Wash-
ington street. Regular notice was given to the owner of
said property, and thereupon she filed in the city court
of Montgomery her answer, in which she set up that the
assessment against said property should not be enforc-
ed and the property should not be sold for the satisfac-
tion of said assessment, upon the following grounds:
"1. That said paving on said street and sidewalk was
laid, and the said assessment is alleged to be authorized
by the provisions of a certain alleged act of the General
Assembly of Alabama entitled 'An Act to authorize the
City Council of Montgomery to issue bonds for the pur-
pose of paving, or otherwise improving the streets and

sidewalks, or either, of the city of Montgomery,' approved February 18th, 1895, and certain alleged ordinance or ordinances passed by the City Council under the supposed authority of said act. And the said owner as aforesaid, saith that said act of the General Assembly of the State of Alabama is violative of section 7 of the Declaration of Rights of the State of Alabama in that it deprives respondent of his property without due process of law. 2. That said act is violative of section 24 of Article I of the Constitution of Alabama in that it seeks to take private property for a public use without first making just compensation therefor. 3. That said act is violative of section 2 of Article IV of the Constitution of the State of Alabama in that it has more than one subject and only one of which is expressed in its title. 4. That said act is violative of the XIV amendment of the Constitution of the United States in that it seeks to deprive a person of his property without due process of law. 5. That said act is violative of said XIV amendment of the Constitution of the United States in that it denies this respondent the equal protection of the laws. 6. That said act is violative of the State and Federal Constitutions and the parts thereof above set forth, in that it seeks to place the entire cost of the paving of said sidewalk and street on the owners of the property abutting thereon, without any regard to any special benefit to such property which might accrue thereto by reason of such paving, but on an arbitrary basis of the front footage of said property abutting on said street. 7. That said act is violative of the said provisions of said State and Federal Constitutions as above set forth, in that it requires the owners of the property abutting on said street to pay more than the entire cost of such paving in front of their respective properties, viz.: their proportionate part, according to the entire length of said street as paved of the paving of said street where the same intersects with other streets, which part of said paving does not front or abut on the property of any person, and also a part of the expense of issuing bonds. 8. That the assessment was not made in accordance with the provision of the charter of the city of Montgomery in this, that

[City Council of Montgomery v. Moore.]

the entire cost of paving in front of respondent's property, together with a proportionate part of the cost of paving the street crossings, and the expense of issuing bonds was assessed against the said property, without regard to any special benefit thereto."

The cause was tried upon an agreed statement of facts to which was attached as exhibits said act of the Legislature and the ordinances of the city, providing for paving Washington street, upon which the property of respondent abutted. It was shown in the agreed statement of facts that the City Council of Montgomery had duly and regularly taken all the preliminary steps required by said act of the Legislature for the paving of said Washington street in said city, and it was admitted in said agreed statement of facts that the ordinances were duly and regularly passed, and that all the steps which had been taken were such as were authorized by said act, and were sufficient to provide for the paving of Washington street, in the event the said act of the Legislature was valid and constitutional. The other facts of the case are sufficiently stated in the opinion.

Upon the hearing of the cause, it was decreed that the assessment against the defendant's property was unconstitutional, null and void, and ordered that the same be set aside, vacated and annulled, and that the proceeding be dismissed.

From this decree the City Council of Montgomery appeals, and assigns the rendition thereof as error.

BIBB GRAVES, for appellant.—The assessment against the property of the defendant, as provided for in the act of the Legislature under consideration, is a species of taxation, and is referrable to that taxing power which is inherent in all government, and is without limitations other than those expressed in the organic law, never to be taken to be surrendered by intendment or implication, and that without an express surrender, clear and explicit in its terms, must be held to reside undiminished in the Legislature.—*Mayor and Aldermen v. Klein.* 89 Ala. 465; Cooley on Constitutional Limitations, *p 487.

41

This being a public improvement, there can be no question that it was competent for the Legislature to authorize it, and to exercise its inherent taxing power to provide payment therefor, and in the making of such provision it is not subject to the limitations of either Article VII or Article XI of the Constitution of 1876. *Klein case, supra.*

It being competent for the Legislature to exercise the power of imposing taxes for the payment of this public improvement, it is equally competent for it to apportion the burden of that taxation among that part of the public especially benefited by such improvement. In other words it may fix the *taxing district,* certainly so when the district as fixed includes only those especially benefited. Upon this proposition I think this court has never definitely passed, and there is considerable conflict in the decisions of the different States; but it is submitted that the great weight of authority supports the contention of appellant.—Beach on Public Corporations, § 1175; 2 Desty on Taxation, p. 1131; Cooley on Constitutional Limitations, *p. 507; Cooley on Taxation, 447; 2 Dillon Municipal Corporations, § 752.

"The courts are very generally agreed that the authority to require the property specially benefitted to bear the expense of local improvements, is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvement shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefitted, and if in the latter mode, whether the assessment shall be upon all the property found to be benefitted, or alone to the abuttors according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency." The last text quotation has received the express sanction of the United States Supreme Court by being incorporated in the majority opinion in the late case of *French v. Barber Asphalt & Paving Co.,* 181 U. S. See, also, *People v. Brooklyn,* 4 N. Y. 419; *Spencer v. Merchant,* 125 U. S. 345; *Mobile County v. Kimball,* 102 U. S. 703; *Cass Farm Co. v. Detroit,* 185 U. S.;

*Smith v. Seattle,* 65 Pac. Rep. 612; *King v. Portland,* 38 Oregon, 402; *Beaumont v. Wilkesbarre,* 142 Pa. St. 198; and authorities cited in note Municipal Corporation Cases, Vol. 3, pp. 657-58. We especially call the court's attention to the learned and exhaustive opinion of Chief Justice CORLISS in *Rolph v. Fargo,* 7 N. D. 640, and the case of *Webster v. Fargo,* 9 N. D. 280.

GORDON MACDONALD, GEORGE M. MARKS, LOMAX, CRUM & WEIL, and WILLIAM T. SEIBELS, *contra.*—The act of the Legislature, so far as it provided for the assessments of the costs of the paving against the property abutting on the street paved, was unconstitutional and void, because such provision of the act was not germane to or included in the title of the act.—Constitution of 1875, Article IV, § 2; *Ballentyne v. Wickersham,* 75 Ala. 573; *Henderson v. Ins. Co.,* 20 L. R. A. 27.

The case of *Mayor, etc. v. Klein,* 89 Ala. 451, is the law in *our* State, and dealing with *our* Constitution in reference to such assessments. The spirit of that decision has passed into our present Constitution,—Sec. 228 of the Constitution of 1901. The act here involved is obnoxious to the present and the old Constitution; is violative of common right, in that it imposes on certain citizens a burden far exceeding the benefits conferred by the paving it provides for, and without any reference to such benefits, and is therefore void. It will be noted also that the act undertakes to make the abutting property pay for all the paving of cross streets as well as that immediately in front of the property. *Mayor v. Klein, supra,* has been again approved by this court in *City Council v. Birdsong,* 116 Ala. 632.

McCLELLAN, C. J.—An act of Assembly approved February 18, 1895, (Acts, 1894-95, p. 906), has this title: "An Act to authorize the City Council of Montgomery to issue bonds for the purpose of paving or otherwise improving the streets and sidewalks, or either, of the city of Montgomery." Section 2 of the act provides, among other things "that whenever the City Council of Montgomery shall deem it wise to pave or otherwise im-

prove any street or portion thereof, or sidewalk or portion thereof, it shall ascertain the approximate cost of such proposed paving or improving, and shall then by ordinance require that said paving or improving shall be done,  *  *  * and provide for the issue of bonds of the character hereinafter described in an amount sufficient to pay the expense of such issue and the costs of such paving or improving."  Section 3 provides the terms of said bonds, and provides that "they shall be payable twenty years from their date, but shall be so issued that said City Council may redeem one-twentieth of the principal thereof annually, and it shall be the duty of said city to redeem at least one-twentieth of each and every issue of said bonds, with all interest due, each year until they are extinguished."  Section 4, so far as pertinent here, is as follows:  "That said City Council shall provide and require, by proper ordinance, that the cost of such paving, together with the expense incident to the issue of such bonds, and the interest thereon shall be assessed against and collected from the owners of the property abutting such paving in such manner that one-twentieth thereof shall be paid each year, such assessment to be prorated according to the frontage of such property, and collected at the same time and in the same manner as city taxes, and shall be a lien upon such property subordinate only to the State and city taxes, to be enforced in like manner as the lien for such city taxes."  The case now presented involves the question whether the foregoing provisions of section 4 of the act are covered by the title of the act, that is, whether these provisions for the raising of funds with which to pay· the principal and interest of the bonds which it is the purpose of the act as expressed in its title to authorize the city to issue are germane, cognate and complementary to the purpose so expressed.  This inquiry must be determined affirmatively, it must be ruled that the provisions referred to are germane, cognate and complementary to the subject expressed in the title of this act, and are, therefore, covered by it and properly embodied in the act as constituting in part the subject so expressed, on the considerations adverted to

and the principles declared in the cases o f *Mitchell, Judge, etc. v. Florence Dispensary,* 134 Ala. 392; *Ex parte Mayor and Aldermen of Birmingham,* 116 Ala. 186; and *State, ex rel. v. Griffin, et al.,* 132 Ala. 47.

The other question in this case arises on the provisions of section 4 of the act above quoted, for the assessment of the whole cost of the paving against abutting property, "prorated according to the frontage of such property," and whether, in view of State and Federal constitutional provisions as to compensation for property taken for public uses and depriving the citizen of property without due process of law, it is within legislative competency to thus impose the costs of street paving and the like upon abutting property without judicial ascertainment of the benefits accruing to such property from such improvements, and apportionment of the costs of the betterments according to and not in excess of the actual benefits enuring from them to the several abutting lots of land. This question has been thrashed over in numerous decisions of the courts, and, while the cases are not uniform upon it, the better view and that supported by the great weight of authority is that it is a matter of legislative expediency and for legislative determination whether abutting urban property will be benefitted to the extent of the costs of a given improvement of the street or sidewalks along its front, and therefore entirely within legislative competency to impose such costs, by way of special tax, upon the property abutting the improved street, apportioning the charge thereto according to the distance the several parcels of land front upon the street. The authorities supporting this view are numerous and include, we believe, all text writers on the subject: "The major part of the cost of a local work," says Judge COOLEY, "is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefitted.

"The major part is sometimes assessed on estates benefitted, while the general public is taxed a smaller portion in consideration of smaller participation in the benefits.

"The whole cost in other cases is levied on lands in the immediate vicinity of the work.

"In a constitutional point of view, either of these methods is admissible, and one may .sometimes be just and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and, like all legislative questions may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the Legislature required to levy it by one inflexible and arbitrary rule."—Cooley on Taxation, 447.

"The courts are very generally agreed," says Judge DILLON, "that the authority to require the property specially benefitted to bear the expense of local improvements is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefitted, and, if in the latter mode, whether the assessment shall be upon all property found to be benefitted, or alone upon the abutters, according to frontage or according to the area of their lots, is .according to the present weight of authority considered to be a question of legislative expediency." 2 Dillon's Municipal Corporations, § 752.

These formulations of the doctrine were approved by the United States Supreme Court in *French v. Barber Asphalt Paving Co.,* 181 U. S. 324, 343, and they are supported by that case and many others, some of which are cited on the brief for appellant.

Judge COOLEY states the same doctrine in his work on Constitutional Limitations, (p. 507) : "It has been held equally competent for the Legislature to make the street the taxing district and assess the expense of improvements upon the lots in proportion to frontage. Here also is apportionment by a rule which approximates to what is just, but which, like any other rule that can be applied, is only an approximation to absolute equity. But if in the opinion of the Legislature it is a proper rule to apply in a given case, the court must enforce it."

Mr. Beach in his work on Public Corporations, states the doctrine as follows: "§ 1072. It is well settled that the power to make a public improvement on the part of a municipal corporation and to impose the burden of the same upon the owners of property benefitted thereby is one which the Legislature may confer upon such corporations as a part of the taxing power belonging to the State. This power of taxation and of apportioning taxation, or of assigning to each individual his share of the burthen, is vested exclusively in the Legislature, unless the power is limited or restrained by some constitutional provision. The power of taxing and the power of apportioning taxation are identical and inseparable. Taxes cannot be levied without apportionment; and the power of apportionment is therefore unlimited, unless it be restrained as a part of the power of taxation. There is not generally in our States any restraint upon it. It is competent for the Legislature to apportion the tax generally upon all taxable persons within its jurisdiction, or within a certain district or local division; or it may apportion the tax according to the benefit which each tax-payer is supposed to receive from the object on which the tax is expended. Whether or not one mode or the other is the more equitable, the Legislature is the sole and exclusive judge. It is wholly a matter of legislative discretion which method shall be adopted, and it is not at all a matter for judicial inquisition or review. Special assessments proceed upon the principle that certain property, peculiarly situated in reference to an improvement, is to be specially benefited in the enhancement of its value, and in levying such assessments the principle of equality in their apportionment is deemed vital, as in ordinary cases of taxation under the Constitution."

And again.: "§ 1175. Where land is to be taken for a public use, the Legislature is the exclusive judge of the amount of land and of the estate therein which the public end to be subserved requires to be taken. It is, therefore, competent for the Legislature to authorize a municipal corporation to condemn the title in fee-simple of

land for public streets.   But the title which the cor-
poration acquires in such case is what may be termed a
'qualified or terminable fee' for street purposes only,
and which it holds not as proprietor, but as an agency
of the State in trust for the public for street purposes,
and which it can neither sell nor devote to a private use.
It was urged in a case where the fee-simple in land had
been condemned for street purposes, that as assessments
for benefits could only be made for local improvements,
and as it was only necessary to take an easement in
land for street purposes, therefore, the taking the fee
was not for a local improvement; consequently, if taken
no assessments could be levied to pay for it.   To this the
Supreme Court of Minnesota said:   'The Legislature
having authorized it, as it might, the condemnation of
the fee for the purpose of opening or widening a street,
which is a local improvement, payment for the land
taken in fee for that purpose is as much a part of the
cost of the improvement as would have been payment for
an easement had that been the interest taken'."

Judson on Taxation has a luminous treatise on this
subject, in line with the texts we have quoted, and fully
sustaining not only legislative competency to assess the
cost of street and other like mprovements against abut-
ting property, apportioning it by frontage, but the prac-
tical expediency and general fairness, and the conclu-
siveness of such assessments.—Section 355, *et seq.*   We
quote one or two passages:   "While a few States still
insist that the apportionment must be made according
to a determination of special benefits in each case, [that
is, in respect of each parcel of property, we suppose]
the trend of authority has been overwhelmingly in sup-
port of the rule that a legislative apportionment by
frontage or area is allowed.   Thus it was said by Judge
COOLEY in the Supreme Court of Michigan in 1881: 'We
might fill pages with the names of cases decided in other
States which have sustained assessments for improving
streets though the apportionment of cost was made on
this same basis (according to frontage) as the one be-
fore us.   If anything can be regarded as settled in muni-
cipal law in this country, the power of the Legislature to

permit such assessments and direct the apportionment
of the cost by frontage, should by this time be consid-
ered as no longer open to controversy.  Writers on con-
stitutional law, on municipal law, and on the law of
taxation have collected the cases, and if the question
were new in this State we might think it important to
refer to what they say.  But the question is not new; it
was settled for us thirty years ago.—*Sheley v. Detroit,*
45 Mich. 431'."—§ 367.

This author further says:  "The apportionment of
the cost of a public improvement by a definite rule, as
by frontage or area in the taxing district, has been held
necessarily to exclude evidence of the want of special
benefits in the enforcement of assessments upon the
property, as the legislative determination in ordering
the assessment upon that basis, presumptively involves
the finding that the property is benefitted to the extent
of the assessment.  This conclusiveness of the legis-
lative decision in the formation of taxing districts is
said, therefore, to rest upon the presumption that the
Legislature proceeds upon investigation and inquiry,
and decides what the public good requires; that it only
creates a taxing district and charges the expense of a
public improvements upon it when satisfied that the
property therein will be specially benefitted by the im-
provement.  The courts in sustaining this doctrine of
legislative conclusiveness, recognize that its real basis
is the impracticability of making any satisfactory judi-
cial apportionment of the benefits from such improve-
ments as between the abutting property and the general
public.  In the language of the Supreme Court of North
Dakota: 'How could the courts ever determine what
part should be paid out of the general treasury and
what part raised by local assessment?  What rule
would govern them in investigating such a question?
And what right have they to dictate where the line
shall be drawn?' "

This court put itself in harmony with the doctrine of
the foregoing texts and decisions in the case of *Mayor
and Aldermen of Birmingham v. Klein,* 89 Ala. 461, de-
cided in 1889; and has so remained, if we leave out of
view some wabbling in *dicta* superinduced by what we

supposed, what was generally supposed, and what three of the judges of the Supreme Court of the United States yet believe, was the effect of that court's decision in the case of *Norwood v. Baker,* 172 U. S. 269.

In that case, *Mayor and Aldermen, etc. v. Klein,* this court sustained as a constitutional and valid enactment a statute which authorized the corporate authorities of Birmingham to grade and pave the sidewalks along the streets of the city, and to assess the *total* cost thereof, although it might be greatly in excess of the value of the benefits to abutting property. It is true that this cost was to be assessed on this property "in proportion to the amount of the benefit accruing to the" property owners; but this only meant that there should be some rule of apportionment of the whole charge having reference to the benefit received by the respective owners and not that no owner should be charged in excess of actual benefits received. The provision would have been fully complied with through an apportionment according to frontage on the sidewalk of the respective abutting lots, and so the act was construed in the opinion.

In the case of *City Council of Montgomery v. Birdsong,* 126 Ala. 632, it was *decided* that the charter of Montgomery giving power to the city to impose cost of street improvement upon abutting property provided for the assessment against each parcel of land in proportion to and not in excess of the actual benefit accruing to each parcel. It was *assumed* rather than decided that such rule of assessment was essential to the validity of the act, and this upon the notion that such was the effect of the decision in *Norwood v. Baker, supra;* and something was *said* in the course of the opinion to the effect that the supposed holding in that case, that such cost could not be laid against abutting lots irrespective of the actual benefit to each lot, appeared to be "consonant with reason and authority." This assumption and this *dictum* were the product of what is now said by the Supreme Court of the United States to be a misconception of the *Norwood-Baker* case; for it has since been decided by the court that it is entirely

competent for the Legislature of a State to lay the cost
of street paving and the like against abutting property,
and to apportion the charge according to the frontage
of each lot on the street, and it was said that the decis-
ion in *Norwood v. Baker,* should be confined to the par-
ticular facts of the case, and that so considered, that
case was not inconsistent with the general doctrine that
the cost of street improvements may be laid wholly up-
on abutting property by frontage.—*French v. Barber
Asphalt Paving Co.,* 181 U. S. 324. Nothing was *decid-
ed* in the *Birdsong* case inconsistent with the prevailing
doctrine as to legislative competency in this connection,
and we feel less constraint toward following the as-
sumption and *dictum* indulged in that case for the
reason that their indulgence is referable to a natural
misconception of the *Norwood-Baker* case, if it were a
misconception, or, if not, then to a case (*Norwood v.
Baker*) which has since been qualified so far as it ori-
ginally bore upon the question now before us. The sub-
sequent case of *City Council of Montgomery v. Foster,*
133 Ala. 587, but followed the *Birdsong* case in the con-
struction of the charter of Montgomery, and nothing is
therein decided or said which is opposed to the well es-
tablished general doctrine of legislative competency to
enact laws such as the statute involved in this case. We
are thoroughly satisfied of the abstract soundness of
that doctrine, and we now reaffirm it, and hold that the
statute before us, authorizing the imposition of the en-
tire cost of certain street, or sidewalk, paving upon
abutting property "prorated according to the frontage
of such property," was a constitutional and valid enact-
ment.

The city court in reaching the contrary conclusion
was doubtless misled by the *Norwood-Baker* case and
by what this court said in the *Birdsong* case, being our-
selves misled thereto by the *Norwood-Baker* case. Its
decree must be reversed. The cause will be remanded.

Reversed and remanded.