CITY OF INDEPENDENCE, *Appellant*, v. GATES, *Executor*.

Division Two, May 31, 1892.

1. **Municipalities:** LOCAL ASSESSMENTS. Municipalities may by virtue of legislative authority improve streets, and levy assessments on the abutting lands to pay for the same.

2. ————: ————: TAXES. Such assessments, while referable to the taxing power, are not, strictly speaking, taxes.

3. **Taxation:** UNIFORMITY OF. Taxation, whether general or special, must be uniform, and must be distributed among those who are to pay it by a just ratio of apportionment.

4. **Municipality:** LOCAL ASSESSMENT: PARTIAL COMPLETION OF WORK. While a municipality may improve a part of a street and tax the abutting proprietors to pay for it, yet before it can exercise this power it must designate the street or part of the street which is to be improved.

5. ————: ————: ————. Where the municipality so designates a street for improvement, it cannot improve only a part of it and collect the cost therefor from the proprietors abutting on the part so improved, and a tax bill so issued for said partial improvement is illegal.

6. ————: ————. The cost of the improvement in case of such partial completion of the work should be apportioned among the abutting property-owners throughout the entire district designated by the ordinance of improvement.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*L. A. Laughlin* and *J. G. Paxton* for appellant.

(1) The city has the right to maintain this action. One who has a chose of action for collection has the right to maintain a suit in his own name. *Webb v. Morgan,* 14 Mo. 229; *Beattie v. Lett,* 28 Mo.

596; *Simmons v. Belt*, 35 Mo. 461; *Snider v. Express Co.*, 77 Mo. 523. The city is the substantial plaintiff in actions on special tax bills. *St. Louis v. Clemens*, 36 Mo. 467. (2) The city had authority by law to let contracts for making street improvements as was done in this case. Power to a municipal corporation to make local improvements, though the expense be directed in the constituent act to be assessed upon the property benefited, gives the corporation, in the absence of provision, evincing a different legislative intent, the implied power to make general contracts therefor. 2 Dillon on Municipal Corporations [4 Ed.] sec. 810; *Cumming v. Brooklyn*, 11 Paige, 596; *Mayer v. New York*, 63 N. Y. 455; *Lutes v. Briggs*, 64 N. Y. 404; *Galveston v. Heard*, 54 Tex. 420. A municipal body, intrusted with the execution of a power, must be allowed some discretion in the choice of means, unless it appears that it was plainly intended to confine it to a prescribed mode. *Page v. St. Louis*, 20 Mo. 136; *Railroad v. Marion Co.*, 36 Mo. 294. (3) Though ordinance 189 required property-owners on College street and the Lexington Road to grade, yet, on their refusal to comply, the city had authority to let a contract for grading only the Lexington Road. *Kemper v. King*, 11 Mo. App. 116; *Eyerman v. Blakesly*, 13 Mo. App. 407; *Emery v. Gas Co.*, 28 Cal. 345; *Moran v. Lindell*, 52 Mo. 229; 1 Dillon on Municipal Corporations [4 Ed.] sec. 799. (4) The misdescription of defendant's property in the tax bill was not fatal, and could have been corrected by the court. A tax bill is not *strictissimi juris*, and acts for public improvements should be liberally construed. Where there has been an erroneous assessment for improvements, and the facts necessary to correct it appear in evidence, it should be corrected and judgment given accordingly. *Neenan v. Smith*, 60 Mo. 292; *Bank v. Arnoldia*, 63 Mo.

229; *Bank v. Nelson*, 64 Mo. 418; *Farrar v. St. Louis*, 80 Mo. 379.   (5)   The defendant by procuring an injunction and stopping the work is precluded from setting up its non-completion as a defense.   Parties must abide the consequences of their own acts.   One who waits till an improvement is about completed before asserting his rights is guilty of such laches as amounts to an estoppel.   *Evansville v. Pfisteverer*, 34 Ind. 45; *LaFayette v. Fowler*, 34 Ind. 146; *Quinlan v. Myers*, 20 Ohio St. 500; *Ritchie v. Topeka*, 38 Kan. 368; *Byram v. Detroit*, 50 Mich. 56.

*Gates & Wallace* for respondent.

(1)   The only power or authority which the city of Independence had to require the work in controversy to be done was conferred, if at all, by section 4942 of Revised Statutes of 1879.   This section, as it then stood (it has since been repealed; see Acts of 1889, page 42), was unconstitutional; because it requires each lot to bear the cost of the improvement opposite the same, instead of its proportion of the whole according to frontage, and because it also provides that a special tax shall be levied and collected from the owner or occupier of such property or lot. Constitution, 1875, art. 10, sec. 3; Cooley on Constitutional Limitations [5 Ed.] p. 630, and note, star p. 500; *City to use of McGrath v. Clemens*, 49 Mo. 552; *Weber v. Schergens*, 59 Mo. 392, 393; *St. Louis v. Allen*, 53 Mo. 44; *Fowler v. St. Joseph*, 37 Mo. 228; *Higgins v. Ausmuss*, 77 Mo. 351; *Woodbridge v. Detroit*, 8 Mich. 274.   (2)   The mode prescribed by the charter must be strictly pursued.   *Thompson v. Boonville*, 61 Mo. 282.   (3)   If work is not substantially completed according to the ordinance and contract, there can be no recovery against the abutting property-owner. *City to use v. Clemens*, 49 Mo. 552; *Bank v. Payne*, 31

Mo. App. 512; *Kiley v. Cranor*, 51 Mo. 541; *Meyer v. Wright*, 19 Mo. App. 283; *Cole v. Skrainka*, 105 Mo. 303; *Fruin-Bambrick Co. v. Geist*, 37 Mo. App. 512. (4) A contract cannot vary the terms of the ordinance. *Galbreath v. Newton*, 30 Mo. App. 381. (5) A street to be improved cannot be divided into sections, and done under different contracts. *Eyerman v. Hardy*, 8 Mo. App. 311. (6) The city of Independence had no authority under its charter to improve its streets by contracts. It must either have the property-owner do it, or do it itself. *Thompson v. Boonville*, 61 Mo. 282; *Mathews v. Alexander*, 68 Mo. 115; *Stewart v. Clinton*, 79 Mo. 610. (7) The plaintiff, under its contract with Messrs. Ash & Gentry, was not liable to them on account of said work. It had no interest whatever in said tax bills, and, therefore, no right to maintain any suit upon them.

THOMAS, J.—This is an action to foreclose the lien of a special tax bill on real estate of plaintiff's testator. The record shows that the city of Independence is a city of the fourth class, incorporated under the general laws of the state. An ordinance of the city, approved May 24, 1886, provided that ''the board of aldermen, whenever they deem it necessary or advisable to construct or grade any street, lane, avenue or alley within the corporate limits of the city of Independence, they shall by ordinance, designate the particular location, length, breadth and grade of such street, and kind of material to be used in its construction and the manner in which it is to be made, and shall require each owner or occupant of any property, lot or lots fronting on said street, lane, avenue or alley upon which such work is to be done, to construct his proportional part of such work within thirty days after the taking effect of such ordinance.''

"Sec. 2.   If any owner or occupant of any such property, lot or lots shall fail, neglect or refuse to grade or construct any street required by ordinance, within the time prescribed in the preceding section, the board of aldermen shall cause the same to be constructed in the manner and of the materials designated in such ordinance at the owner's or occupant's expense."

On the thirteenth day of July, 1887, the city passed two ordinances, numbered 188 and 189.   The former provided that a grade be established on College street and Lexington Road from Liberty street east to the eastern limits of said city in accordance with the profile as submitted by the city engineers; and the latter required the owners and occupiers of the property on College street between Liberty and Noland streets, and on Lexington Road between Noland street and the eastern city limits to grade the same to the established grade in front of their respective lots within fifteen days after the approval of the ordinance, and that, in case of neglect or refusal of any owner or occupier of property to do the work within the time required, the board of aldermen should cause the same to be done at the owner's or occupier's expense, and levy a special tax and collect the same by a special tax bill which should be a lien on the property.

On the first day of August, 1887, the city passed a general ordinance, number 195, authorizing the improvement of streets and repealing the ordinance approved May 24, 1886.   By this ordinance it is provided that when the board of aldermen deem it necessary or expedient to grade any street they shall designate by ordinance the street or portion of the same to be improved, and shall specify therein the improvement to be made, whether by grading, paving, etc., and material, if any, to be used in the improvement, and shall by ordinance require property-owners to make the improve-

ments in the manner and with the material specified in said ordinance, and to complete the same within the time required therein, not less than fifteen nor more than thirty days after the passage of the ordinance requiring the improvement to be made.

And then follow provisions for the work being done by the city if the property-owners fail or refuse to do it. On the ninth day of August, 1887, the city entered into a contract with Ash & Gentry, which recites that said Ash & Gentry are the lowest and best bidders for doing the work provided for by ordinance number 189, and that they covenanted and agreed to do the work mentioned in said ordinance in a substantial and workmanlike manner in obedience to the directions of the city engineer.

College street and Lexington Road constitute but one highway. Lexington Road is a continuation of College street from Noland street to the eastern limits of the city. The portion of College street specified in ordinance number 189 extends west from Noland street across Main to Liberty street. The engineer certified to the city council that Ash & Gentry had completed the work according to the contract, but the report of the engineer shows that they had done no work from Liberty street to Noland street, and that the work done by them was on Lexington Road alone from Noland street to the eastern limits of the city, and by an ordinance approved January 2, 1889, the total cost of the work was apportioned among the owners of the property abutting on Lexington Road, and among these owners was plaintiff's testator, whose land was taxed at $441.58 and a special tax bill issued therefor, which recited that the board of aldermen of the city had caused the work provided for by said ordinances numbers 189 and 195 to be done, and which was completed, and this suit was

brought to foreclose the lien on the land supposed to have been created by that tax bill.

It also appears that a few of the owners of lots abutting on College street did the work in front of their lots in compliance with the ordinances, but others did not.

Upon these facts the court held that plaintiff could not recover, and it appeals.

Many important and interesting questions have been ably discussed by the attorneys in the case, but the conclusions we have reached render it unnecessary to notice them all.

Conceding, without deciding, that section 4942, Revised Statutes, 1879, authorizing cities to improve streets, and said ordinance number 189, did not make each lot, abutting on the street improved, liable for the cost of the work done in front of it; and that said ordinance 195 did not repeal ordinances 188 and 189, and that the city was the proper party to prosecute this suit, we still think plaintiff is not entitled to recover.

There is no longer any question that cities may, by virtue of legislative grants, improve streets and make assessments on the abutting lands to pay for the same. The power to make such assessments has been the prolific source of much forensic discussion, and difficulty seems to have existed in tracing this power to its true source and basing it upon a sound principle, but it is settled in Missouri and generally elsewhere that it is referable to the taxing power, though such assessments are not taxes in the sense that word is usually employed. *Levee Co. v. Hardin*, 27 Mo. 496; *Palmyra v. Morton*, 25 Mo. 593; *Sheehan v. Hospital*, 50 Mo. 155; *St. Louis v. Allen*, 53 Mo. 44; *Keith v. Bingham*, 100 Mo. 300.

Much of the discussion has resulted from the desire of the judges, in their efforts to administer justice in

concrete cases, by the application of abstract rules, to prevent inequality in burdens. But the task of attempting to lay down a sound principle or a basis for this class of public exactions was found to be a fruitless one, and the judges and critics had to content themselves with the statement that an approximation to equality was as near to justice as man could come, as no system of taxation had ever been devised and probably never would be devised that would lay equal burdens on all alike. The hope for perfect equality in taxation is illusory and utopian. Theoretically, *ad valorem* taxes on property for general revenue are equal, but, practically, we all know they are not. This results from an inequality of valuation. Holmes, in his work on the common law, page 1, says that "the life of the law has not been logic; but experience." Whether this be universally true or not we must confess that all we can say about the rule under discussion is that it is the law, and it is the law because it has been sanctioned by experience.

In some instances it has been held that a tax for local improvement could be levied on the abutting property on the ground that the property is benefited. But, if the improvement is made for the benefit of the abutting lot only, the right of the public to tax the owner at all for that purpose fails. The public has no right to levy a tax on a citizen for his own benefit. This tax, like taxes for general revenue, can be levied for a public purpose only. The great difficulty consists in determining what a public purpose is. It is universally held that a street is for the public use, and its improvement is for a public purpose. And a municipality may tax abutting lands for the improvement of a portion of a street. In this respect it has a large discretion, but it may abuse that discretion so that the courts would be justified in interfering to prevent gross

injustice. *Paulson v. Portland*, 16 Ore. 450; *Little Rock v. Katzenstein*, 52 Ark. 107; 12 S. W. Rep. 198; *Pueblo v. Robinson*, 21 Pac. Rep. 899. It cannot tax a single man for his own benefit alone, but it can tax a group of citizens for their joint benefit. See the Missouri cases cited, *supra*.

Taxation, whether general or special, must be uniform and must be distributed among those who are to pay it by a just ratio of apportionment. It cannot be levied by an arbitrary command of the lawmaking power. One rule cannot be applied to one owner and a different rule to another owner.

Upon what principle then shall taxes for local improvements be levied? In some cases it is done by levying an *ad valorem* tax on the property situated in the district previously designated, in others it is raised on the basis of benefits to be fixed by assessors, in others by the front-foot rule as it is termed, in others by the superficial area; but it is now almost universally denied that an owner can be compelled to pay the whole cost of the improvement of the street in front of his lot. In such case his tax would neither be increased nor diminished by the assessment upon his neighbors, and each particular lot would arbitrarily be made a taxing district and charged with the whole expenditure thereon. It is evident, therefore, that a law for making assessments on this basis could not have in view such distribution of burdens in proportion to benefits as ought to be a cardinal idea in every tax law. It would be nakedly an arbitrary command of the law to each lot-owner to construct the street in front of his lot at his own expense according to a prescribed standard; and a power to issue such command could never be exercised by a constitutional government, unless we are at liberty to treat it as a police regulation and place the duty to make the streets upon the same footing as to keep the

sidewalk free from obstruction and fit for passage. But any such idea is clearly inadmissible. Cooley on Constitutional Limitations [6 Ed.] sec. 25. But a tax levied on property by the front-foot rule is held to be clearly within the taxing power. *City to use v. Clemens*, 49 Mo. 552. This is the rule adopted in the case at bar.

While a municipality may improve a portion of a street and tax the abutting proprietors to pay for it, yet before it can exercise this power it must designate the street or portion of street that is to be improved. Without this no apportionment of the burden can be made, and no uniformity established. The power to fix boundaries for taxing purposes is arbitrary enough at best, and cannot be extended so as to allow the boundaries to be fixed after the burden is imposed, without surrendering private property to confiscation.

In the case at bar the city of Independence could not, either under its general powers, or the ordinance of May 24, 1886, or that of August 1, 1887, improve any street until it designated by ordinance the street or part of street to be improved. On June 13, 1887, it did designate the highway known as College street and Lexington Road, from Liberty street to the eastern limits of the city, as the part that should be improved, and when the contract was let to Ash & Gentry the whole of the portion thus designated was required to be graded; but no work was done on that portion known as College street, and the whole cost of the work done was apportioned to those owning property on Lexington Road, thereby exempting from the payment of the tax all the property abutting on that portion known as College street. This the city had no authority to do, because it had designated the highway from Liberty street to the city limits as the portion to be improved, and it had no right to improve a part of the street thus designated, and collect the

cost of that part from the proprietors abutting thereon. It could have designated Lexington Road alone as the portions to be improved, but it did not see proper to do this. The general ordinances of the city required a petition to the board of aldermen, signed by a majority of those to be affected, before a street could be improved; and it is probable that in this case there would have been serious objection to the improvement of Lexington Road alone, while there would have been none to the improvement of the whole street. Again, a large majority of owners might have been west of Noland street, and they alone could have petitioned and obtained an order for the improvement of the whole street against the consent and contrary to the wishes of every property-owner along Lexington Road, and in such case to allow the city authorities to improve the portion of the street in front of those who did not petition for it, and make them alone pay for it, and at the same time abandon the improvement on that portion of the street in front of those who procured the order to be made, and let them escape all expense, would be neither reasonable nor just.

Suppose merchants doing business on that portion of the highway known as College street should desire to macadamize Lexington Road to enable the people from the surrounding country to reach their stores with greater facility, would it be just to do the work at the expense of the property-owners along that road, every one of whom probably would object to the improvement, at their expense? We think not. If a majority of the property-owners along Lexington Road should ask for the improvement of the road, and the board of aldermen should designate that road alone for improvement, the minority then, in the absence of fraud or gross oppression, would have to yield, and the city could in that case tax all the abutting proprietors on

that road for the whole cost of the improvement according to the front feet owned by each. Such a tax would have the two constitutional requisites, uniformity and proper apportionment. It would be uniform because fixed per front foot, and the apportionment would be proper, for it would be ratably assessed on all property in a district previously designated.

Again, we can very well conceive of a case where the requisite number of aldermen could not be induced to pass an ordinance, or, if it should pass the council, when the mayor would refuse to approve it, because it included too much or not enough of a given street, and it may be that if ordinances numbers 188 and 189 had designated Lexington Road alone for the improvement, it never would have received the approval of the council or mayor.

Besides these considerations the improvement of a portion of a street might be valueless without the improvement of the whole of it. A highway must be taken as an entirety, and it becomes valuable in proportion to the extent of its improvement. A street paved with asphaltum would be almost worthless if bisected by an impassable ravine or bluff. Hence, the requirement that the municipality shall be held to the boundaries fixed by itself in the first instance in the improvement to be made is founded on sound principle and justice. This power to improve streets is an extraordinary one, and is often liable to abuse, and, hence, the courts have held those who exercise it to a strict compliance with the term of the grant. Elliott on Roads & Streets, 380; *Cole v. Skrainka*, 105 Mo. 303, and cases cited.

But there is a second reason why the tax bill in this case is void and created no lien on the property in dispute. Messrs. Ash & Gentry undertook and con-

tracted to do the work mentioned in ordinance number 189, and that ordinance specified the work to be on College street and Lexington Road from Liberty street to the city limits, and there is no pretense by plaintiff that they did any work on that portion of the highway known as College street, and, therefore, no tax bill could be legally issued because the whole work was not completed. *City to use v. Clemens*, 49 Mo. 552. In this case the cost of the improvement should have been apportioned among the abutting property-owners according to the front feet owned by each, from Liberty street to the eastern city limits on the principle that all the property in the designated district must be taxed. *Diggins v. Brown*, 76 Cal. 318; *Rentz v. Detroit*, 48 Mich. 544; *City of Kansas v. Baird*, 98 Mo. 215; Desty on Taxation, pp. 29, 30.

We do not decide that the municipality can exempt those who make the required improvement in front of their own lots from any further liability for the cost of the whole work; for no such person is before the court, and because it is clearly proved in this case that *some* of the property-owners on College street did not do the work required by ordinances 188 and 189, and this property was not included in the apportionment of this tax. We can very well see how such a rule of exemption would operate unjustly. Suppose A, B and C are the abutting proprietors and their properties are of equal extent, and that the required work in front of A's property would cost $100, in front of B's $100, and in front of C's $1,000, and A and B should do the work in front of their property, manifest injustice would be done C, who would be required to do five times as much work as A and B combined, though the improvement was presumably for the equal benefit of all.

It was ruled by this court in *Leach v. Cargill*, 60 Mo. 316, that, where the ordinance gave the owners of

property fronting on the street to be improved the privilege of doing the work in front of their own property, proof of failure to comply with this provision rendered tax bills against the abutting owners void. Whether they could be exempted from the payment of any additional tax for the expense of the whole without regard to the proportion of the work in front of their property to the whole work done has not been decided here or elsewhere, so far as our research has gone. It might be that if they could, in any case, be held for contribution for the expense of the whole work, though doing the work in front of their own property themselves, the ordinance would have to so prescribe, making provision for the ascertainment of the value of the work done by the owners themselves, and adding that to the expense of doing the remainder, thus finding the cost of the whole and then deducting the cost of the work done by individuals from their proportionable share of the whole work. But these are questions that we do not feel called upon to decide in this case for reasons heretofore given. These suggestions bring us to that broad field of investigation so often traversed by jurists, seeking to find a practical rule of equal taxation and finding none; but at this time we are not required and, therefore, we decline to enter that field at this new point of contact.

The judgment will be affirmed.    All concur.