# Harton *v*. Town of Avondale.

*Bill for Supersedeus and Certiorari to the Authorities
of the Town of Avondale to Stay Further
Proceedings as to CertainAsessments
and to Declare the Same Null
and Void.*

(Decided July 6, 1906. 41 So. Rep. 934.)

1. *Exceptions, Bills of; Signing; Time.*—The judgment in this case
   was rendered Jan. 31st, 1906, and the bill of exceptions signed
   Nov. 13, under orders by the court extending the time of sign-
   ing to Dec. 1st, 1905. Held, that the signing was within six
   months of the adjournment of the term at which the judgment
   was rendered and within the time fixed by the trial judge under
   orders extending the time, and that the bill was signed in time.

2. *Constitutional Law; Due Process; Special Assesssment.*—The as-
   sessment of the cost of improvement against lands abutting in
   the immediate vicinity of the improvement, being a part of the
   taxing power of the government, cannot be said to be without
   due process of law, because there is not a provision for a reg-
   ular investigation by court and jury in order to ascertain the
   amount of burden that shall be placed upon the property.

3. *Municipal Corporations; Street Improvement; Special Assess-
   ment; Method of Imposition.*—The determination of the pro-
   portion of the burden of the cost of street improvement, that
   shall be borne by the abutting property and by the public, be-
   ing a matter of legislative discretion, and the legislature having
   determined that the assessment shall be made in a particular
   manner, it will be presumed that the legislature has deter-
   mined, that that is the proper measure of the benefits received.

4. *Same; Assessment of Benefit.*—The rule of assessment that the
   cost of the improvement must be assessed in proportion to the
   amount of benefits accruing to the property owner means sim-
   ply that there should be some rule of apportionment of the
   whole charge, having reference to the benefit received by the
   respective owners, and not that one owner should not be
   charged in excess of actual benefits received.

5. *Same; Constitutional Provision; Instruction.*—§ 223 constitution
   1901 merely fixes the limit beyond which assessments for mu-
   nicipal improvement on abbutting property shall be void, and

[Harton v. Town of Avondale.]

authorizes the courts to examine the matter and determine whether or not such constitutional limit has been transcended; and such provision has no application to the manner in which the assessment is proportioned, whether by the front foot, or otherwise.

6. *Same; Charter Provisions;; Validity.*—The charter of the city of Avondale (Acts 1894-5, p. 139) does not violate § 223, constitution of 1901.

7. *Same; Review.*—Under the provisions of the charter of Avondale the property owner against whom the assessment is made, if not satisfied with the action of the board of assessment, (in this case the city council) may remove the matter by certiorari to the city or circuit court, and have the matter tried *de novo.*

8. *Same; Apportionment of Cost.*—Section 12 of the Avondale city charter declares that not more than one-third of the cost of street improvements shall be assessed against the owners of abutting property, not including sidewalks. Held, the city was without authority to assess one-third of the cost of the entire street improvement to the owners on each side of the street, as such assessment would require a payment by the abutting property of two-thirds of the cost of the work.

9. *Same; Cost of Guttering.*—Section 12 of the Avondale city charter does not authorize the assessment of the entire cost of guttering against the property abutting on the street.

10. *Same; Authority to Improve Streets; Character; Delegation.*—The authority granted the city of Avondale and its council to grade and pave streets and sidewalks is legislative in character, and it cannot delegate to any other official or committee to determine the kind and character of the improvements. The city council must ascertain and determine this matter.

11. *Same; Ratification.*—Where the ordinance providing for the improvement of a street, delegated to the street committee the duty of having the streets graded, guttered, curbed and macadamized, and left the specifications and material to the judgment of the street committee, and after levy of an assessment the work was accepted by the city council, such acceptance constituted the entire proceedings the act of the city council, and the assessment was not void because the specifications and material were left in the first instance to the street committee.

12. *Same; Method of Levy; Assessment.*—Section 223, constitution of 1901, places but one limit on street improvement assessment, and an assessment is not void under it, solely because each lot was assessed on the basis of the cost of the work done in front of it, instead of first ascertaining the entire improvement cost, and apportioning the same among the abutting owners.

[Harton v. Town of Avondale.]

APEAL from Birmingham City Court.

Heard before HON. C. W. FERGUSON.

This bill was filed by the appellant against appellee, reciting that certain street improvements had been made abutting her property, and that the costs of said street improvement had been assessed against her property, without regard to the benefits accruing from said improvement to her property, and greatly in excess of the value derived from said improvement or the benefits accruing to the property therefrom, and alleging, also, the acts of the general assembly under the authority of which the town of Avondale was making these assessments.— Acts 1894-95, p. 137. The prayer of the bill is that writs of supersedeas and certiorari be issued from this court, directed to the mayor and aldermen of the town of Avondale, commanding them to "stay all further proceedings and to send forthwith a certified copy of the entire proceedings and records to this court, and that upon consideration by this court of said proceedings the said assessment shall be declared null and void and of no effect." On the final hearing of the cause the trial court found the issues in favor of the defendant, and entered a judgment for the amount of the original assessment, plus 8 per cent. interest, and also adudged that the judgment should be a lien upon the lots of the appellant. From this judgment she appeals. There was motion to dismiss bill of exceptions, because not signed in time, the facts concerning which sufficiently appear in the opinion.

LEADBEATTER & JOHNSTON, for appellant.—The successful prosecution by the petitioner of his writ of certiorari reviewing the proceedings of Avondale in the matter of improvement assessments must result in an order quashing and annulling the levy made by the municipality.—Acts 1894-5, p. 137, § 12; *Fore v. Fore*, 44 Ala. 478; *Ex parte Madison Turnpike Co.*, 62 Ala. 93.

A charter or ordinance which arbitrarily declares that the unascertained whole cost of a local improvement shall be assessed against abutting property without reference to the special benefits is unconstitutional and void.

[Harton v. Town of Avondale.]

—Mayfield's Digest, vol. 5, p. 697, and note; § 223 constitution of Ala. (1901) ; *City Council v. Foster,* 133 Ala. 587; *City Council v. Birdsong,* 126 Ala. 632; *Harlan, J.,* in *French v. Barber Asphalt &c. Co.,* 181 U. S. 324.

Curbing and guttering are not parts of the sidewalk but of the street and no greater per cent of their cost can be assessed against abutting property than the charter authorizes in case of streets.—*McNamara v. Estes,* 22 Iowa 246; *Warren v. Henley,* 31 Iowa 31; *Wilson v. Chilcott,* 12 Colo. 600, 21 Pac. 901; *Job v. People,* 193 Ill. 609, 61 N. E. 1079; *B. F. M. R. Co. v. Spearman,* 12 Iowa 112; *Buell v. Ball,* 20 Iowa 282; 25 Am. & Eng. Encyc. Law, (2d Ed.) p. 1180; *Palmer v. Way,* 6 Colo. 106.

To assess each lot with all or a fixed per cent. of the work actually done in front of it without regard for the work done, cost, benefit, or detriment to all or any of the other lots is a vicious and illegal method of assessment.—Cooley, Taxation 453, Chap. 20, § 53; Id. (2d. Ed.) 646, 647; 25 Am. & Eng. Encyc. Law (2d. Ed.) 1204 and ca. ci.; McQuillin Munc. Ord. p. 858, § 550; *City of Independence v. Gates,* 110 Mo. 374, 19 S. W. 728; *Diggins v. Brown,* 76 Cal. 318, 18 Pac.; Cooley Const. Lim. (6th Ed.) 250; *Johnson v. Milwaukee,* 40 Wis. 315; *Watkins v. Milwaukee,* 52 Wis. 98, 8 N. W. 823; 81 Wis. 326, 51 N. W. 566; 34 Ohio St. 551; *Watkins v. Zwietusch,* 47 Wis. 513, 3 N. W. 35.

The dictum in *City Council v. Moore,* 140 Ala. 638, to the effect that a statute requiring an apportionment according to benefit would be fully complied with by an apportionment according to frontage is unsound and has been repeatedly discountenanced.—2 Dillon Munic. Corp. (4th Ed.), note to § 752, p. 914; *Ware v. Jerseyville,* 158 Ill. 234, 41 N. E. 736; *State v. Hudson,* 29 N. J. L. 104; Ib. 115, 266; *State v. Jersey City,* 40 N. J. L. 485; 38 N. J. L. 419; 39 N. J. L. 646; 37 N. J. L. 425; *Watkins v. Zwietusch,* 47 Wis. 513, 3 N. W. 35; 40 Wis. 315, 52 Wis. 98; 55 Wis. 335, 369.

[Harton v. Town of Avondale.]

Where the charter of a town confers upon the town council the power to cause its streets and sidewalks to be improved and to assess the cost thereof against abutting property, these functions cannot be delegated to any committee or other agency. The council must determine the place, the nature and plan of improvement, and the means, leaving to agents nothing more than the execution of the plans adopted by the council itself; and an ordinance which directs in general terms, the making of an improvement and referring the whole matter (e. g. letting contract, determining character of material, etc.) to "the street committee," is abortive and void and wholly inoperative as a foundation for the levy of special assessments against the abutting owners.—*Hydes v. Joyes,* 96 Am. Dec. 311, 4 Bush. 464; *Birdsall v. Clark,* (N. Y.) 29 Am. Rep. 105 and note; *McCrowell v. Bristol,* 20 L. R. A. 653, and note; *City of St. Louis v. Clements,* 43 Mo. 395; s. c. 52 Mo. 133; *Ruggles v. Collier,* 43 Mo. 353; *Foss v. City of Chicago,* 56 Ill. 354; *Moore v. City of Chicago,* 60 Ill. 243; *City of St. Joseph v. Wilshire,* 47 Mo. App. 125; *Thompson v. Schermerhorn,* 55 Am. Dec. 385.

So in regard to levying the assessment: the exercise of that power is judicial and cannot be delegated.—*State v. Town of Hoboken,* 32 Atl. 65, 58 N. J. L. 129; *Simmons v. Passaic,* 38 N. J. L. 60; *White v. Stephens,* 67 Mich. 33, 34 N. W. 255, *et passim.*

Where an ordinance authorizes a certain improvement to be made throughout a given district, the cost of which it is proposed to assess against the property abutting the improvement, it is illegal to levy the assessment when only a portion of the contemplated improvement has been made. The cost of the entire improvement as originally authorized must be ascertained and apportioned over the entire property. Otherwise, an assessment is premature and abortive.—*City of Independence v. Gates,* 110 Mo. 347, 19 S. W. 728; *City of St. Louis v. Clements,* 49 Mo. 552; *Diggins v. Brown,* 76 Cal. 318, 18 Pac. 373; *Bellevue Imp. Co. v. Bellevue,* 39 Neb. 876, 58 N. W. 446.

[Harton v. Town of Avondale.]

BOWMAN, HARSH & BEDDOW, for appellee.—On the authority of *Abercrombie v. Vandiver*, 140 Ala. 229, and cases therein cited, the court will not consider the bill of exceptions in this case, and as no error is assigned of record the cause must necessarily be affirmed.

SIMPSON, J.—It appears from the record that the judgment appealed from in this case was rendered on January 31, 1905; that there were orders by the presiding judge successively extending the time for signing the bill of exceptions to December 1st; and that the bill was signed November 13, 1905, which was more than nine months after the date of the judgment and beyond the next term of the court. Section 620 of the code of 1896 is imperative that "the time allowed for signing a bill of exceptions must not be extended beyond six months from the adjournment of court," and rule 30, p. 1200, of the code of 1896, provides that the limit to which the signing may be extended by agreement is that it must be signed "before the next succeeding term of such court." Appellee claims that as the time when the bill of exceptions was signed in this case was after the commencement of the next succeeding term, and more than nine months after the judgment was rendered, the same cannot be considered. According to the act establishing the city court of Birmingham there is but one term of court, "commencing on the first Monday in September and ending on the last day of the succeeding June."—Acts 1888-89, p. 995. This court has heretofore held that the limitation as to the next term of court, under rule 30, applies only to extensions by agreement.—*Cooley v. U. S. Savings & Loan Ass'n*, 132 Ala. 590, 592, 31 South. 521. The extensions in this case were all by the presiding judge, and the bill was signed within six months after the adjournment of court, as shown by the act above cited.

But another question arises: The act establishing the city court of Birmingham provides that bills of exceptions "must be signed by the presiding judge of said court within sixty days after the day on which the issue

or issues of fact to which such bill of exceptions relates was tried, unless the time for signing such bill of exceptions is extended by agreement of parties, or by order of the presiding judge, as now authorized by law respecting the signing of bills of exceptions in the circuit court."—Acts 1888-89, p. 1000. Section 617 of code of 1896 provides that "the court may, in term time, fix a time in which the bill of exceptions may be signed, and the judge may, in vacation, extend such time"; and section 619 provides that "the time fixed by the court or judge may be extended by agreement of parties or their counsel, and the time fixed by agreement may be extended by the judge in vacation." This court has heretofore held that the judge of the city court cannot extend the time for signing a bill of exceptions during the sitting of the court; but on the authority of the case of *Moss v. Mosely,* (Ala.) 41 South. 1012, this bill was properly signed.

The matter of local assessment for street improvements has been so completely "threshed over," as expressed in a previous decision of this court, that we will not attempt to go over the argument pro and con in the various cases, but will merely allude to the latest expressions from the supreme court of the United States and our own court. The substance of the latest decision of the supreme court of the United States on this subject is (*French v. Barber Asphalt Co.,* 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879) that it is not a violation of the 14th amendment to the constitution of the United States to assess a portion or all of the cost of the improvement against the lands abutting or in the immediate vicinity of the improvement. And the gravamen of the argument of the court is that this is a part of the taxing power of the government, and that from time immemorial governments have not pursued ordinary processes of courts in collecting taxes; hence the methods of enforcing these assessments cannot be said to be "without due process of law," because there is not provision for a regular investigation by a court and jury in order to ascertain the amount of burden that shall be placed upon the property. It holds, also, that the "question of benefits and the

property to which it extends is of necessity a question of fact, and, when the legislature determines it in a case within its general power, its decision must, of course, be final." Page 338 of 181 U. S., page 630 of 21 Sup. Ct. (45 L. Ed. 879). Quoting from the case of *Spencer v. Merchant*, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, the court says: "In the absence of any more specific constitutional restriction than the general prohibition against taking property, without due process of law, the legislature of the state having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed either like other taxes upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax and the class of lands which will receive the benefit, and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners.—Page 339 of 181 U. S., page 630 of 21 Sup. Ct. (45 L. Ed. 879). After giving analysis of the numerous cases on the subject, in most of which there seems to be a presumption that at some stage of the proceedings and in some way the property owner has had an opportunity to test the matter of the amount of benefits to his land by the improvement, the general conclusion is that it is a matter of legislative discretion to determine what proportion of the burden shall be borne by the property, and what by the public, and, while it is admitted that any assessment beyond the special benefits received by the improvement is, as to the excess, taking the property without due process of law, yet when the legislature determines that the assessment is to be made in a certain way, as by the front foot, the presumption is that the legislature has determined that that is the proper measure of the benefits received. *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, is not opposed to the views of the court in this case, and explains that in that case the entire cost of opening the street was thrown upon the abutting property, which was "an act of confiscation," and that the legal effect of

the decision was to prevent the enforcement of the par-
ticular assessment, and to let the village in its discretion
make a new assessment "for so much of the expense of
the opening of the street as was found upon due and
proper inquiry to be equal to the special benefits accru-
ing to the property (pages 344, 345 of 181 U. S.) page
63 of 21 Sup. Ct. (45 L. Ed. 879) ; and the court say : "It
may be conceded that the courts of equity are always
open to afford a remedy where there is an attempt to de-
prive a person of his life, liberty, or property without due
process of law." The court then calls attention to the
fact that in the case before the court the lots along the
street in question were of equal value, similarly situated
with regard to the street, of equal depth and all "sub-
stantially on the grade of the street." While it is the
opinion of the writer that the dissenting opinion of Jus-
tices Harlan, White, and McKenna has the advantage of
the argument, yet in what shall be said in this opinion
our conclusions shall be based on the opinion of the
court as the law of the land.

Our own court has followed this decision, and held
that it is a matter of legislative discretion to determine
whether property abutting on the streets will be benefit-
ed to the extent of the cost of paving the street along the
front of such property, and to impose the cost upon the
property, "apportioning the charges thereto according
to the distance the several lots may front upon the street
so paved"; the argument being, as in the *French-Barber
Case,* that when the legislature determines that the as-
sessment shall be made by the front foot the presumption
is that the legislature has determined that that is the
proper measure of the benefit received . Our court says,
in reference to our case of *Mayor and Aldermen v. Klein,*
89 Ala. 461, 7 South. 386, 8 L. R. A. 369, which is held to
be in harmony with our latest enunciation of the doc-
trine : "It is true that this cost was to be assessed on
this property in proportion to the amount of the benefit
accruing to the property owners; but this only meant
that there should be some rule of apportionment of the
whole charge, having reference to the benefit reecived by

the respective owners, and not that no owner should be charged in excess of actual benefit received."—*City Council of Montgomery v. Moore,* 140 Ala. 650, 37 South. 294. The court says that the case of *City Council of Montgomery v. Birdsong,* 126 Ala. 632, 28 South. 522, was based on "what was generally supposed, and what three of the judges of the supreme court of the United States yet believe, was the effect of that court's decision in the case of *Norwood v. Baker."—City Council of Montgomery v. Moore,* 140 Ala. 638, 37 South. 291.

As will be noticed, these decisions are based entirely on the construction of the fourteenth amendment of the constitution of the United States and section 24 Bill of Rights, Const. 1875, and upon the law as it stood before the adoption of our present constitution. It was while the *Norwood-Baker Case* in the United States supreme court and the *Birdsong Case* in our own court were generally supposed to be the law—the former declaring that an assessment beyond the benefits actually accruing to the abutting owner from the improvement is as to the excess a taking of property without due process of law (which principle, as before shown, is still recognized); and that the courts have a right to inquire into that fact; and the latter, resting upon the same principle, and declaring that "the guaranties for the protection of private property would be seriously impaired if it were established, as a rule of constitutional law, that the imposition by the legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvements, could not be questioned by him in the courts of the country," and going on to affirm the right of the citizen, when such assessment is made, to show "that the sum so fixed is in excess of the benefits received"—that our constitutional convention of 1901 added to our constitution section 223, forbidding such assessments "in excess of the increased value of such property by reason of the special benefits derived from such improvements."

The conclusion is irresistible that, with the lights before them, the intention of our constitution makers was

to fix this limit in our organic law beyond which any assessment should be void, and to authorize the courts to examine into the matter and determine whether or not the constitutional limit had been transcended. To hold otherwise would be to suppose that the makers of the constitution had taken the trouble to formulate and adopt an absolutely meaningless new section to the constitution. To say that assessments shall not be made beyond the benefits received, and yet that, when an assessment is made, either directly by the legislative action or by a rule prescribed by it which has no provision for inquiring into the benefits, is to conclusively presume that the benefits were ascertained, and that the assessment was not in excess thereof would render the constitutional provision absolutely inoperative. This constitutional provision has nothing to do with the manner in which the assessment is apportioned, whether by front foot or otherwise, but only fixes a limit beyond which it cannot go. It necessarily follows that the property owner has the right in some form and at some time to contest the fact as to the benefits accruing and to bring forward such testimony as he can produce on that matter. Any guaranty of the constitution would be but a brutum fulmen, if there were no tribunal in which the citizen could demand the enforcement of his right. It is true, as has been said, that it is often a difficult matter to ascertain accurately the extent of the benefit; but the courts have to pass upon many difficult matters, and the only result of that is that, in this, as in other matters in which absolute accuracy is unobtainable, much latitude must be allowed to the tribunals which pass upon the matter. It may be admitted, as stated by the supreme court of the United States, that it belongs to that class of rights which do not necessarily demand a regular jury trial. Nevertheless it must be passed upon in some way, and if the original assessment is not done under some proceeding in which the citizen has had an opportunity to produce evidence and have a legal determination of the matter, the courts afterwards can inquire into it and enforce his right. Being difficult to ascertain, the conclu-

sions of the tribunals as to the benefits accruing will not be weighed with delicate scales, but some tribunal must act, or the constitution-protected citizen is as helpless as if he were the subject of a despot.

The provisions of the charter of the town of Avondale require the assessment against the abutting owners to be made "in proportion to the amount of the benefit accruing to such abutting owner."—Acts 1894-95, p. 139. While this is not exactly in the words of section 223 of the constitution, yet it does not violate that section. The assessment may be made in "proportion to the amount of the benefit accruing to such abutting owner," and at the same time not to be "in excess of the increased value of such property by reason of the special benefits derived from such improvement." The act makes provision for notice to the property owner when an assessment is to be made against his property, and authorizes him to appear and contest the assessment, and it authorizes the owner, if not satisfied with the action of the council, to remove the matter by certiorari up to the city or circuit court, "where the same shall be regularly submitted and tried as in other civil cases." This last expression shows that the intention of the statute was not that the circuit or city court should merely look into the proceedings before the council, and either quash or affirm the same; but the reference is evidently to cases brought up by appeal, and the expression "regularly tried as in other civil cases" evidently means tried de novo. So the act is not unconstitutional.

The act provides that "not more than one-third of the cost of such improvement * * * shall be assessed against the owners of abutting property," not including sidewalks.—Acts 1894-95, p. 139, § 12. The evidence in this case shows that each property owner was charged with one-third of the cost of the entire street, so that the owner on each side of the street was charged with one-third of the cost of the entire street, thus causing the property owners to pay two-thirds, in place of one-third, of the cost of the work. This was in plain violation of the provisions of the statute, and the court erred in sustaining the assessment thus made.

As to the resolution of the board of mayor and aldermen, the evidence shows, that in addition each property owner was charged with the entire cost of the "sidewalks, curbing and guttering." While the curbing may be so constructed as to make it a part of the sidewalks, yet it is clear that the guttering is a part of the street proper, and not of the sidewalk.—*Job v. People,* 193 Ill. 609; 61 N. E. 1079; *Allman v. Dist. Columbia,* 3 App. Cas. D. C. 8, 17; *Wilson v. Chilcott,* 12 Colo. 600, 602, 603, 21 Pac. 901. Consequently it was erroneous to sustain the assessment against the property owner of the entire cost of the guttering.

Section 12 of the act (Acts 1894-95, p. 139) authorizes the mayor and councilmen to cause and procure the streets and sidewalks to be graded, macadamized, etc. The ordinance under which the work was done in this case authorized the street committee to have the streets "graded, guttered, curbed, and macadamized." The ordinance did not contain any specifications as to the kind of work that was to be done, the material to be used, or any other matter in regard either to the street or sidewalk. These matters seem to have been left entirely to the judgment of the street committee. It is a familiar principle of law that legislative authority cannot be delegated, and the authorities are clear to the effect that the authority granted to grade and pave streets and sidewalks is legislative, and that the amount of the improvement, its kind and character, must first be ascertained by the legislative body of the city, and not delegated to the engineer, the committee, or any one else.—McQuillan, Municipal Ordinances, § 86; *Hydes & Goose v. Joyes,* 96 Am. Dec. 311, and notes; *Birdsall v. Clark,* 29 Am. Rep. 105, and note; *McCrowell v. Bristol,* (Va.) 16 S. E. 867, 20 L. R. A. 653, and note; *City of St. Louis v. Clemens,* 43 Mo. 133; s. c. 52 Md. 133; *Ruggles v. Collier,* 43 Mo. 353; *Foss v. City of Chicago,* 34 Ill. 489; *Moore v. City of Chicago,* 60 Ill. 243; *Bolton v. Gilleran,* 105 Cal. 244, 38 Pac. 881, 45 Am. St. Rep. 33; *Thompson v. City of Booneville,* 61 Mo. 282; 1 Dillon on Munic. Corp. (4th

Ed.) § 96, p. 779, and note. The supreme court of the United States, however, in a case in which the city authorities authorized the mayor and chairman of the committee on streets to make a contract for doing the work, directing how the preparatory work should be done, and ordering the construction to be of one or the other several materials, but giving to the owners of abutting lots the privilege of selecting which, held that, "while it is true the council could not delegate all the power conferred upon it by the legislature, * * * it could do its ministerial work by agents," yet "there was no unlawful delegation of power. But, if there had been, the contract was ratified by the council after it was made." —*Hitchcock v. Galveston,* 96 U. S. 341, 348, 349, 24 L. Ed. 659. Under this authority we hold that the subsequent ratification constituted the entire proceeding, including the assessment, the act of the city authorities, and not a delegation of legislative power.

It is next insisted that this assessment is invalid because it is shown that each lot was assessed on the basis of the cost of the work done in front of it, and that the cost of the work done on the entire street was not first ascertained and the cost apportioned among the abutting owners. The act provides that "the expense thereof shall, after the completion of the same, be assessed upon the abutting owners of land or lots along and adjacent to the streets, alleys or sidewalks along which the work is done, in proportion to the amount of the benefit accruing to such abutting owner"; also that "after such work on any street, alley or sidewalk shall be completed in front of or abutting any land or lot owner, the said mayor and board of aldermen shall have the mayor to give the notice required, of the time and place when the meeting is to be held to consider and determine the amount to be assessed against the abutting owner." and the amount will then be determined."—Acts 1894-95, pp. 139, 140, § 12. There is high authority for the position that any assessment of the cost separately against each lot owner, based alone on the cost of the work abutting his property, is illegal and void.—*City of Independence v. Gates,* 110 Mo. 374, 19 S. W. 728; *Davis v.*

*Litchfield,* 145 Ill. 313, 33 N. E. 888, 21 L. R. A. 563, and notes; Cooley on Taxation (2d Ed.) pp. 646, 647, and notes. But Judge Dillon, after referring to similar decisions, remarked: "Still it seems to the author difficult to find satisfactory and solid ground on which to discriminate the case, so as to hold that one is within the constitutional power of the legislature and the other is not."—2 Dillon's Municipal Corporation (4th Ed.) p. 922, § 753. Inasmuch as our constitution has placed the one limit which we have hereinbefore construed, and inasmuch as in conforming to that limitation the assessment must frequently not be uniform among the abutting owners along the street, and while we recognize that the duty rests upon the legislative department as fas as possible to apply the principle of uniformity, yet we cannot say that this fact alone renders the assessment invalid.

For the errors mentioned the assessment in question was invalid, and the town of Avondale was not entitled to recover in this case. The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

WEAKLEY, C. J., and TYSON and ANDERSON, JJ., concur.