EMMA C. JOHNSON, Respondent, v. CHARLES H. DALRYMPLE, Administrator, Appellant.

### Springfield Court of Appeals, December 6, 1909.

1. **TAXES: Definition: Distinction from Local Assessment.** The word tax, in its ordinary and received sense, means a public imposition for governmental and public purposes and not a local assessment for municipal purposes.

2. **CONTRACTS: Construction.** It is an elementary rule that in the interpretation of a contract, its words must be taken in their ordinary and usual sense, and when they are free from ambiguity and uncertainty there is no room for construction.

3. ———: ———: **Covenant to Pay Taxes.** By a contract in the form a lease, a tenant had an option to purchase the leased premises under certain conditions. The tenant, under the contract, was to pay "all taxes." In a suit to enforce the tenant's option to purchase, it was held that a special assessment against the premises levied to pay for the construction of a district sewer, while the relation of landlord and tenant existed, was not included under the term "taxes," which the tenant had contracted to pay.

### On Petition for Rehearing.

4. **CONTRACTS: Construction: Special Assessment.** Where a tenant has an option to purchase the leased premises upon certain conditions and before exercising that option and during the time of the relation of landlord and tenant, a special tax-bill for the construction of a district sewer became a lien upon the premises, the legal theory that the assessment is for the benefit of the property is not involved, and the vendor cannot require the tenant to pay the special assessment as a condition precedent to his right to purchase, unless the contract contains a specific agreement to that effect.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*E. C. McAfee* for appellant.

(1) The court erred in requiring defendant to specifically perform the contract without requiring plaintiff to pay the taxbill. Section 5858, Revised Statutes 1899, as amended by laws of 1901, p. 64; Everett v. Marston, 186 Mo. 587; Mercantile Trust Co. v. Niggeman, 119 Mo. App. 56. (2) Although the courts hold that the word "taxes" does not necessarily include special assessments of this character, yet the attention of this court is called to the provision in this contract requiring plaintiff to pay all taxes and insurance. That provision clearly shows that it was the intent and understanding of both parties, that plaintiff asumed all future burdens of ownership, and that defendant's decedent assumed none of them.

*E. D. Merritt* for respondent.

(1) The contract, being complete within itself, cannot be varied, or added to, by inference and assumption; and more especially is this true in this case, where such inference and assumption is not warranted by a single fact in the case. Morgan v. Porter, 103 Mo. 135; Harrington v. Brockman Com. Co., 107 Mo. App. 423; Mfg. Co. v. Jaeger, 81 Mo. App. 242; Squier v. Evans, 127 Mo. 518; Huber Mfg. Co. v. Hunter, 87 Mo. App. 50; Kellerman v. Railroad, 136 Mo. 177. (2) The rights, duties and burdens of respondent are all comprehended within the eight corners of the written contract. Meyer v. Christopher, 176 Mo. 580; Wood Machine Co. v. Bobbst, 56 Mo. App. 427; Thornton v. Boyce, 56 Mo. App. 179; Beatie v. Coal Co., 56 Mo. App. 221. (3) "There is in this State a broad distinction between local assessments for municipal purposes,

and taxes levied for general public purposes." City of Clinton v. Henry Co., 115 Mo. 563. "Such assessments (special assessments for local purposes) are not, however, taxes in the sense that term is usually employed." McCutcheon v. Railroad, 72 Mo. App. 275; Levee Co. v. Hardin, 27 Mo. 496; Palmyra v. Morton, 25 Mo. 593; Keith v. Gingham, 100 Mo. 300; Independence v. Gates, 110 Mo. 374; St. Louis v. Allen, 53 Mo. 52; Sheehan v. Good Samaritan Hospital, 50 Mo. 158; Barry v. Cemetery Assn., 10 Mo. App. 587; Neenan v. Smith, 50 Mo. 528.

STATEMENT.—This case originated in the probate court of Greene county, Missouri, upon a petition praying for specific performance, which is in words and figures as follows (caption omitted):

"Your petitioner, Emma C. Johnson, would respectfully represent and show:

"That F. T. Mills, late of Greene county, Missouri, departed this life in said county and state on or about the —— day of ———, 1908, intestate, and Charles H. Dalrymple is the duly appointed qualified and acting administrator of the estate of said decedent; that heretofore, to-wit, on the first day of December, 1904, said decedent then in full life, entered into a contract in writing for the conveyance of certain real estate, a copy of said contract being hereto attached and marked 'Exhibit A' and made a part of this petition; that said decedent did not execute the conveyance therein contracted, nor did he give power by will, or otherwise, to execute the same.

"Petitioner further states that by the terms of said contract in writing said F. T. Mills contracted and agreed to convey to your petitioner, Emma C. Johnson, the following described real estate, to-wit: Beginning at a point fifty (50) feet north of the southeast corner of lot numbered Thirty-three (33) in Harwood, Lisenby and Boyd's Addition to the City of Springfield, Greene

county, Missouri; thence north sixty (60) feet; thence west two hundred sixteen (216) feet; thence south sixty (60) feet; thence east two hundred sixteen (216) feet to the beginning, said tract or parcel of land so contracted to be conveyed, being the north thirty-five and one-half (35 1-2) feet of Lot numbered Thirty-three (33) and the south twenty-four and one-half feet (24 1-2) of Lot numbered Thirty-four (34) in said Harwood, Lisenby and Boyd's Addition.

"That by the terms of said written contract said F. T. Mills contracted and agreed to sell and convey said real estate herein described for the price and sum of twelve hundred and fifty ($1250) dollars, on monthly payments of twelve and 50-100 ($12.50) dollars per month, plus interest, on the purchase price, at the rate of eight per cent per annum, together with taxes and insurance; and when such monthly payments have reduced the debt to nine hundred and fifty ($950) dollars then said Emma C. Johnson is entitled to a deed of conveyance to said real estate, the deferred payment of $950.00 to be evidenced by a promissory note of even amount, payable on or before two years after date, with interest from date at the rate of eight per cent per annum, payable semi-annually, and secured by a first deed of trust on said real estate, privilege being given in said contract to pay all or any part of said $300 at any time.

"Your petitioner further states that the amount due said estate under and by virtue of said contract is as follows:

"$1250.00  Purchase price.
   426.40  Interest from Dec. 1, 1904, to March 6, 1908, 8 per cent.
    58.58  State, County and City Taxes paid by F. T. Mills.
    14.80  Insurance paid by F. T. Mills.

$1749.78  Gross amount due March 6, 1909.

"That your petitioner has paid thereon from time to time the sum of six hundred and seventy-five and 13-100 ($675.13) dollars, leaving a balance of one hundred and twenty-four and 65-100 ($124.65) dollars due the estate of said F. T. Mills, in order to bring the balance due said estate to the sum of $950.00; and your petitioner now brings into court and tenders the administrator of said estate the said sum of $124.65, thus completing her monthly or partial payments, and leaving a balance of $950.00 due said estate, for which said sum your petitioner here now tenders her promissory note, due on or before two years from date, with interest thereon at the rate of eight per cent per annum, payable semi-annually, and secured by a first deed of trust on said real estate; and your petitioner states that she has in all things fully performed her part of said written contract.

"Wherefore, she prays for an order and judgment of this court requiring said Charles H. Dalrymple, Administrator, as aforesaid, to specifically perform said written contract, and to accept the balance due thereon, and convey to her by a good and suitable deed of conveyance the interest that said F. T. Mills had in and to said real estate at the time of his death, and for such other and further relief as may be right and just, and your petitioner will ever pray.

"EMMA C. JOHNSON,
"By E. D. MERRITT,
"Her Attorney.

"State of Missouri, County of Greene.—ss.

"Emma C. Johnson, petitioner herein, being first duly sworn, upon her oath deposes and says: That the above and foregoing petition is in all things true and correct to the best of her knowledge and belief, and that no part of said contract has been satisfied, except as stated in said petition.

"EMMA C. JOHNSON,

"Subscribed and sworn to before me this 26th day of March, 1909.

"EDWARD D. MERRITT,
"Notary Public."

The administrator thereupon filed the following answer (caption omitted):

"Comes now Charles H. Dalrymple, and for answer to the petition of Emma C. Johnson heretofore filed, admits that he is the duly appointed and qualified administrator of the estate of F. T. Mills, deceased, and that the said Mills executed the contract herein stated, and further admits that petitioner .has paid to said Mills the various sums stated, and that the sums admitted by petitioner as paid out for taxes and insurance under said contract are correct, but that not all of such sums paid out by said Mills are included in said petition.

"That in addition to the amounts set out in said petition, and paid out by him under said contract, should be included the payment of $70.81 paid by said Mills as a special tax for the improvement of said property mentioned in the contract.

"That subsequent to the date of the contract, and while petitioner was in possession of the same under said contract, special taxbill No. 2325A, was issued by the clerk of the city of Springfield, as directed by ordinance approved May 3d, 1905, for the sum of $70.81, for the construction of a certain sewer for the benefit of said property, and that it created a lien against the same.

"That said F. T. Mills, under the terms of the contract, paid out on said taxbill, in satisfaction of the same, the sum of $70.81, and that the same became a charge against petitioner, under the contract, she receiving the benefit of the same.

"Wherefore said administrator prays the court to require the petitioner to pay said sum of $70.81, or to in-

crease the tender of $124 to $195.46 before requiring specific performance of said written contract.

"CHARLES H. DALRYMPLE,

"Administrator of the Estate of F. T. Mills, Deceased.

"By E. C. MCAFEE,

"His Attorney."

The cause was taken by appeal from the probate court to the circuit court of Greene county. On retrial before that court, judgment was rendered in favor of the plaintiff and specific performance as prayed in the petition was enforced, from which judgment the defendant has perfected his appeal to this court.

At the trial in the circuit court, the following articles of agreement were offered in evidence by the defendant:

"THIS INDENTURE entered into this 1st day of December, 1904, by and between F. T. Mills, of Springfield, Missouri, party of the first part, and E. C. Johnson and husband, of Springfield, Missouri, party of the second part; Witnesseth, that the said party of the first part hereby leases to the party of the second part the following described real estate and the buildings thereon, to-wit: Beginning 50 feet N. of S. E. corn. Lot 33 Harwood, Lisenby and Boyd's Add. to Springfield, Mo., N. 60 feet fronting on Washington Ave. for the monthly rental of twelve 50-100 per month, payable monthly in advance on the 1st day of each and every month hereafter, and it is further agreed between said parties that at such time as the party of the second part shall have paid the said party of the first part three hundred dollars rent on said premises, that is to say, rent for 36 consecutive months at 15 50-100 dollars per month, beginning Dec. 1st, 1904. Then at the option of the party of the second part she shall have the right to purchase said premises at the price of $1250.00 and she shall be credited thereon the $300.00 rent already paid, or said three hundred may be paid at any time, leaving balance due

on purchase money of nine hundred and fifty dollars, with interest at the rate of eight per cent per annum from the 1st day of December, 1904, payable semi-annually. It is also agreed that the party of the second part on the payment of three hundred dollars and interest at the rate of eight per cent per annum, payable semi-annually from said first day of December, 1904, to the time said $300.00 shall have been paid, shall be entitled to a deed at her option, and upon receiving a deed from the said party of the first part for said premises she shall execute to said party of the first part her promissory note, secured by first deed of trust on said premises for the balance of purchase money due namely, $950.00, and which purchase money shall be payable on or before two years after date with interest at eight per cent per annum, payable semi-annually. The party of the first part is to keep said premises in good repair and insured for the benefit of said first party for the sum of eight hundred dollars, and pay the premium on such insurance, said policy shall be assigned to said F. T. Mills.

"The party of the second part shall pay all taxes from and after this date, December 1st, 1904.

"In witness whereof the said party have hereunto set their hands and seals the day and date above written.

"Signed:  F. T. MILLS,           (Seal)
          "MRS. E. C. JOHNSON,  (Seal)"

The defendant, to sustain the issues on his part, then offered in evidence sewer bill No. 2325A, issued by the city clerk of the city of Springfield, May 5, 1905, pursuant to an ordinance authorizing it, dated May 3, 1905, said taxbill being regular on its face and constituting a valid lien on the property described in the contract, being within the corporate limits of the city of Springfield, Missouri, and the amount of the levy being $70.81. Said special taxbill was for the construction of

sewers, and was issued by the proper authority. The defendant offered to prove that the deceased, F. T. Mills, was compelled to and did, after being sued by the legal holder of said taxbill, pay the same as a special assessment against the property described in the contract, and that such payment was made on or about May 10, 1907; that respondent was in possession before said sewer was ordered and the assessment made and continued in possession of the premises to the date of this suit; all of which evidence the court refused to admit and consider, to which ruling the defendant duly excepted.

The trial court gave judgment "that the plaintiff had complied with her contract, was entitled to a deed upon payment of $124.65 and the delivery of a promissory note for $950, and *that the payment of said taxbill by defendant's decedent could not be made a charge against the plaintiff,*" and the defendant was required to specifically perform the agreement as prayed in plaintiff's petition.

NIXON, P. J. (after stating the facts).—This is an action on a contract, in form a lease, with an option in the lessee, on conditions, to purchase the leased premises. It is manifest from an examination of the pleadings, evidence and judgment of the trial court that the only question we are required by this appeal to determine is whether the special taxbill for $70.81, for the construction of a district sewer, paid by the decedent, F. T. Mills, was included in the contractual obligation of the respondent "to pay all *taxes* from and after December 1st, 1904."

The only means at the command of courts in cases like the present, to enable them to ascertain the intention of the parties to a contract, is to apply the well established canons of interpretation. The determination of the present case is therefor centered in small compass and all depends upon the meaning which ought to be given to the words "all taxes" which appear in the con-

tract. Of course, in cases of this kind, the whole object of the inquiry is to ascertain the intention of the parties from the words they have used. In proper cases, in which written contracts are construed by courts, additional light can often be obtained by taking a general survey of the entire instrument, making the several parts consistent with each other. In this case, however, the contract is not fairly open to two constructions as there are no repugnant clauses to be reconciled; its terms are clear and unambiguous. The courts cannot make contracts for parties and can only interpret and enforce such agreements as the parties have seen fit to make.

The rule is of long standing and elementary that in the interpretation of a contract, "its words must be taken in their common, ordinary and usual sense, and when they are free from ambiguity and uncertainty, there is no room for construction." [Roy v. Boteler, 40 Mo. App. 213; Missouri Edison Electric Co. v. Bry, 88 Mo. App. 135; Maginn v. Lancaster, 100 Mo. App. l. c. 130.]

The words "tax" and "taxation" received an authoritative construction by our Supreme Court more than fifty years ago in the case of Egyptian Levee Co. v. Hardin, in which the court used substantially these words: "The word 'tax,' in its ordinary and received sense, means a public imposition for governmental and public purposes, and not local assessments for municipal purposes." [Egyptian Levee Co. v. Hardin, 27 Mo. 495-497.] A clear and consistent line of cases in this State from that time to the present has recognized the distinction between a *tax* in its ordinary sense and a *local assessment* for municipal purposes. [City of Clinton v. Henry County, 115 Mo. l. c. 563; McCutcheon v. Railroad, 72 Mo. App. l. c. 275; Palmyra v. Morton, 25 Mo. 593; Keith v. Gingham, 100 Mo. 300; Independence v. Gates, 110 Mo. 374; St. Louis v. Allen, 53 Mo. l. c. 52;

Sheehan v. Good Samaritan Hospital, 50 Mo. 1. c. 158; Barry v. Cemetery Ass'n, 10 Mo. App. 587; Neenan v. Smith, 50 Mo. 1. c. 528.]

But we are not left with these decisions. The principles of legal interpretation here announced have been applied to the interpretation of the word "tax" as used in leases and covenants in other jurisdictions. The word "taxes," as used in a covenant of a tenant whereby he covenants *"to pay all the taxes* that may be assessed and levied within his term," these courts hold must be presumed, in the absence of qualifying words or clauses, to be used in its common and ordinary acceptation and meaning, and therefore the tenant is not liable for grading and paving and gutter assessments. [Longmore v. Tiernan (Pa.), 3 Pittsb. R. 62, 64; Beals v. Providence Rubber Co. (R. I.), 23 Am. Rep. 472; Bolling v. Stokes (Va.), 21 Am. Dec. 606; DeClerc v. Barber Asphalt Paving Co. (Ill.), 47 N. E. 367.]

From the foregoing authorities and principles here announced, it is apparent the judgment rendered by the trial court in this case was for the right party. It is accordingly affirmed. All concur.

### ON PETITION FOR REHEARING.

NIXON, P. J.—We need not recall in considering this petition for rehearing the rule of universal application in appellate practice that appellate courts will determine cases on the same theory on which they were presented to the trial court. In the discharge of our duty under this rule—to ascertain upon what theory this case was tried and determined in the circuit court the impact of our opinion was placed upon the word "taxes" as used in the agreement in which the parties to this controversy stated their liabilities.

But appellant again appears and in a petition for rehearing and insists with much warmth and ability that we should consider this case upon a different the-

ory in order that justice may be done. Lest some wrong be done, we again call attention to the facts in this case.

From the point of view that is now presented in the petition for rehearing, the question to be determined, as stated in the motion is—"In an action for specific performance by the vendee, will the vendor be compelled to pay special assessments and improvements made after the making of the contract between them where the contract is silent in regard to the payment of such special assessments." The appellant, in support of this theory, has cited a large number of decisions to the effect that after a sale of land to a vendee, if an assessment is made by a municipality for the betterment of the land— like the assessment in the present case for a sewer—the cost falls upon the purchaser.

Recurring to the written agreement on which this suit was founded, its terms provide for a lease of the premises with an option in the respondent to purchase the same. By its terms, until this option is exercised, the rights of the parties are only those of lessor and lessee. The indenture was entered into on the 1st day of December, 1904, and provided that Emma C. Johnson should pay a rental of twelve dollars and fifty cents per month from that date, and when her rental payments amounted to three hundred dollars, she should have the option to purchase the same upon giving her promissory note for nine hundred and fifty dollars, securing it by a deed of trust on the premises. The special taxbill for the construction of a district sewer became a lien on the premises sold thirty days after the 3d day of May, 1905. It will thus be seen that at that time, the relation and rights of the parties to this suit was that of landlord and tenant and continued such for months after this charge was made upon the premises. So that the whole reasoning of the petition for rehearing proceeds upon the false basis that the respondent was in possession of the land *as vendee,* when the fact is patent on the face of the agreement that she had not and

could not, under the terms of the contract, exercise her option to purchase the land. If then, the appellant had desired to throw the burden of this special assessment or any special assessment that might be levied upon the lessee—as he did the general taxes—he should have put such agreement in his contract. The law does not place such a burden upon the lessee in the absence of a specific agreement and we cannot do so. The petition for rehearing is denied. All concur.